UNITED STATES of America, Appellant,

v.

CENTRAL CAROLINA BANK AND TRUST COMPANY, Trustee, and Luther R. Veasey, Appellees.

No. 14725.

United States Court of Appeals, Fourth Circuit.

Oct. 2, 1970.

Department of Justice, on brief for appellant.

Lillard H. Mount and Richard M. Hutson, II, Durham, N. C., on brief for appellees.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BOREMAN, Circuit Judges.

HAYNSWORTH, Chief Judge:

The Attorney General has moved for summary reversal of the District Court's order denying a preliminary injunction in the Government's suit to require the defendants to desegregate their golfing facility. We reverse and remand for entry of a preliminary injunction pending final determination of the action.

The defendant bank is the trustee of the Durham Foundation, which operates Hillandale Golf Course, located in Durham, North Carolina. Hillandale was established pursuant to a 1939 deed granting certain realty to the Foundation to "be used for general recreational purposes by the white citizens of Durham, City and County *. * *." The individual defendant is the manager of Hillandale; he is also the proprietor of the Hillandale pro shop, which is located on the premises of Hillandale and which he operates under lease from the trustee. The pro shop sells golfing equipment, much of which is manufactured out of North Carolina. In addition it rents electric golf carts to Hillandale patrons. These carts are assembled in North Carolina, but components representing approximately 35 per cent of their finished value come from out of the state. At the time the action was commenced there was a snack bar located in the pro shop, but it was discontinued and all food service equipment was removed some two weeks after the complaint was filed.

From the time of its inception, Hillandale has been open to white residents of North Carolina on payment of a greens fee.[1] Negroes are uniformly excluded.

William L. Osteen, U. S. Atty., Jerris Leonard, Asst. Atty. Gen., Gerald W. Jones and Dorothy E. Mead, Attys.,

1. The Attorney General contends that admission has in fact been generally open to non-residents of North Carolina, and urges that this fact constitutes an additional ground of coverage. However, this contention is based on factual al-

This action was instituted by the Attorney General, as authorized by the Civil Rights Act of 1964 (42 U.S.C. § 2000a–5). He contends that the Act requires Hillandale to admit persons to its facilities without regard to race, arguing that it is a place of public accommodation both as an establishment having on its premises a food service facility under § 2000a(b) (2), and as a place of entertainment under § 2000a(b) (3). We consider here only the question of Hillandale's coverage as a place of entertainment affecting commerce.[2]

■■ The record indicates that, although they may be separate in a business sense, Hillandale and the pro shop are so intertwined in operation that they may properly be considered a single enterprise. Both are owned by the Foundation; the pro shop is located on the golf course premises and is leased and operated by the golf course manager. The shop contains a lounge and locker rooms which are used by patrons of the golf course and which do not appear to be intended for any other purpose. It offers golfing equipment for sale, much of which is doubtless used at Hillandale. In addition, the shop owns forty electric golf carts which are rented to Hillandale patrons for use on the golf course. In short, the pro shop appears to exist solely as an adjunct to Hillandale to provide its patrons with products and services normally expected to be available at such an establishment. Without the golf course, there appears no reason for the pro shop, as such, to exist. It is possible, though unlikely, that a golfer might come to the pro shop at Hillandale to purchase balls and clubs which he intended to use exclusively elsewhere. It is not even imaginable, however, that the electric carts rented by the shop could serve any purpose other than to provide a convenience to Hillandale's patrons. The pro shop, therefore, is an integral part of the place of entertainment, which Hillandale unquestionably is. Daniel v. Paul, 395 U.S. 298, 89 S.Ct. 1697.

If the products and services provided by the pro shop are "sources of entertainment which move in commerce," 42 U.S.C. § 2000a(c) (3), Hillandale is a covered establishment and is subject to the Act's requirement of non-discrimination. Under Daniel v. Paul, *supra*, there can be little question but that they are. The products and services furnished by the pro shop bear a closer relationship to the total operation at Hillandale than did the sources of entertainment held to result in coverage of the facility in *Daniel.*[3] The connection with interstate commerce is as great. Of the golfing equipment sold by the pro shop, it is undisputed that more than half was manufactured outside of North Carolina. Although the electric golf carts are assembled in North Carolina, most of their essential parts are manufactured in oth-

---

legations which are sharply disputed and which have not been ruled on by the District Court. Under these circumstances it would be inappropriate for us to attempt to base any decision on this ground.

2. It is clear that, under the decision in Daniel v. Paul, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318, the presence of the snack bar, which served food and drink originating out of North Carolina, would have made Hillandale a covered establishment under 42 U.S.C.A. § 2000a (b) (4) (A) (ii) and (B). Because there is another adequate ground for decision, we need not face the difficult question of whether the status of an estab-

lishment as covered under the Act is "frozen" by institution of an action to desegregate it, even though the establishment discontinues the performance of all services on which its coverage is based.

3. The facility under consideration in *Daniel* was Lake Nixon, Arkansas, a diversified 232-acre operation providing swimming, boating, sun bathing, picknicking, miniature golf, dancing facilities, and a snack bar. A jukebox manufactured outside of Arkansas and sixteen paddle boats purchased or leased from an Oklahoma company furnished sufficient basis for the Supreme Court to hold that Lake Nixon furnished sources of entertainment that moved in commerce.

er states.[4] Since each cart represents an investment of about $1,000, approximately $14,000 of the total $40,000 investment in carts represents components originating out of North Carolina.[5]

■ On the facts discussed above, the plaintiff has shown a high probability that he will ultimately be entitled to the relief sought.

■ While there are no private plaintiffs involved in this action, this does not mean that the requirement that irreparable injury be shown should be so construed as to defeat the plain statutory language authorizing the Attorney General to seek, and the courts to grant, preliminary relief when a sufficient case has been made.[6] This authorization for preliminary relief without the intervention of an individual aggrieved party implies that the forbidden discrimination itself constitutes irreparable injury.[7]

Under these circumstances, a requirement that Hillandale admit golfers without regard to race pending final determination of the action will result in less injury, if any, to it than would result to others from its continued discrimination against and affront to those Negroes who wish to use its facilities. The preliminary injunction should have been granted.

Reversed and remanded.

4. Components which are manufactured in other states include the motors, wheel assemblies, batteries, chargers, solenoids, seats and steering assemblies.

5. There is a distinction between the definition of "affecting commerce" applied to food service establishments under § 2000a (b) (2) and that applied to places of entertainment under § 2000a(b) (3). The former affect commerce if a substantial portion of the food served has moved in interstate commerce; thus it is proper to consider the origin of individual ingredients in locally processed food items. Daniel v. Paul, supra. Places of entertainment affect commerce only if their "sources of entertainment" move in commerce. Whether this distinction means that a locally manufactured source of entertainment, assembled in part from out-

of-state components, as the golf carts in this case are, does not "move in commerce" within the meaning of § 2000a(c) (3), is a question which need not be decided at this time. The majority of the items of equipment sold by the pro shop to Hillandale patrons, such as balls and clubs, are admittedly manufactured entirely outside of North Carolina.

6. "[T]he Attorney General may bring a civil action in the appropriate district * * * requesting such preventive relief, including an application for a permanent or temporary injunction, restraining order or other order * * * as he deems necessary to insure the full enjoyment of the rights herein described." 42 U.S.C. § 2000a–5(a).

7. See United States v. Hayes International, 5 Cir., 415 F.2d 1038, 1045.