**UNITED STATES of America**

v.

**VIRGINIA ELECTRIC AND POWER COMPANY et al.**

**Civ. A. No. 638–70–R.**

· United States District Court,
E. D. Virginia,
Richmond Division.

May 4, 1971.

As Modified May 17, 1971.

David L. Rose, Steven B. Glassman, Kurt H. Sorenson, Robert Feder, Dept. of Justice, Washington, D. C., for United States.

Jay J. Levit, Stallard, Levit & Atkins, Richmond, Va., for IBEW Locals.

Francis V. Lowden, Jr., Hill B. Wellford, Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., for VEPCO.

Thomas X. Dunn, Sherman, Dunn & Cohen, Washington, D. C., for IBEW, AFL–CIO.

## MEMORANDUM

MERHIGE, District Judge.

This suit was brought by the Attorney General of the United States against Virginia Electric and Power Company (VEPCO), the International Brotherhood of Electrical Workers, AFL–CIO (IBEW), and Local Unions 216, 220, 279, 655, 699, 905, 980 and 1064, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The Attorney General has moved for a preliminary injunction, 42 U.S.C. § 2000e–6(a), asking that three practices of the defendants be temporarily enjoined. These practices are the system of job and departmental seniority, the requirement of a high school education as a prerequisite for advancement of certain employees hired before the date on which those requirements were universally imposed on all employees, and the use of testing as a prerequisite to advancement.

## FINDINGS OF FACT

Defendant VEPCO is a Virginia corporation, with its principal office located in Richmond. It does business in a 32,-000 square mile area covering portions of Virginia, West Virginia and North Carolina.

VEPCO is an employer within the meaning of 42 U.S.C. § 2000e(b) and is engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(h). It has approximately 6,053 employees of whom approximately 586 are black.[1]

Defendant IBEW is an unincorporated association doing business in the State of Virginia, and its principal office is in Washington, D.C. Defendants Local Union No. 216, Harrisonburg; Local Union No. 220, Clifton Forge; Local Union No. 289, South Boston; Local Union No. 655, Charlottesville; Local Union No. 699, Falls Church; Local Union No. 905, Newport News; Local Union No. 980, South Norfolk, and Local Union No. 1064, Richmond; (Locals) are unincorporated associations doing business in Virginia.

A System Council of IBEW Local Unions was established February 1, 1944, by agreement of the Executive Boards of the defendant Locals. It was eventually approved by the IBEW International President March 7, 1944. The primary function of the Council is to represent the Locals in contract negotiations with VEPCO. It also processes certain grievances and other matters specifically referred to it by the Locals or by VEPCO.

The Locals are chartered by the IBEW upon meeting specified IBEW criteria. All bargaining agreements or amendments must be submitted by the Locals to the International President for approval. Failure to secure such approval renders all such agreements or amendments null and void. All agreements between the Locals and VEPCO must recognize that the Locals are a part of the IBEW and all agreements must conform to the IBEW constitution. The System Council is in the same relationship with the IBEW as are the Locals.

At all times material to this action defendant Unions have been the exclusive bargaining representatives for hourly employees of VEPCO with respect to wages, rates of pay, hours of employment, working conditions, and other conditions of employment. As of January 1, 1971, there were approximately 2,990 employees in the collective bargaining agreement. Of these, 497 or 16.6% were

---

1. The area VEPCO serves is approximately 18.6% black.

black. All of the Unions represented by the System Council have entered into a single collective bargaining agreement with VEPCO.

The current collective bargaining agreement became effective April 1, 1967, and was amended with respect to wages on April 1, 1968, April 1, 1969 and April 1, 1970.[2] Both current and superseded collective bargaining agreements were signed by the IBEW International Representative and approved by the IBEW International President. Subsequent amendments were approved, as required, by the IBEW constitution, and the IBEW is a party to the collective bargaining agreement.

The collective bargaining agreements in effect during the time material to this action set forth each job classification within the recognized IBEW bargaining unit. The collective bargaining agreements also provide for establishment of lines of promotion within each department of VEPCO.

It is clear that it takes several years of training in order to qualify for most of VEPCO's top IBEW bargaining unit jobs. For this reason, VEPCO generally fills those jobs with men trained and developed by VEPCO. This, in itself, is not unreasonable, so long as all qualified employees have the opportunity to reach those levels.

The manner in which these men are trained is that the lines of progression at VEPCO are groups of jobs, usually functionally related, through which employees progress from the entry level job in the line to successively higher paying jobs. There are also some jobs not within progression lines.

2. A new agreement is in the negotiation stage at the present time. The old agreement remains in effect on a day to day basis.

3. VEPCO is divided into districts, which for promotional purposes are treated as separate companies. In other words, employee seniority in Alexandria has no effect on seniority in Richmond, and vice-versa.

VEPCO is divided into eleven geographic districts and three systems which are companywide. Within these eleven districts and three systems there are a total of 31 departments. The departments and numbers of employees are as follows:[3]

|  | WHITE | BLACK |
|---|---|---|
| **POTOMAC** | | |
| Trans. & Distr. | 287 | 40 |
| Elec. Prod. (Possum Point) | 77 | 17 |
| | 364 | 57 |
| **PENINSULA** | | |
| Gas Prod. | 4 | 0 |
| Gas Distr. | 35 | 56 |
| Trans. & Distr. | 133 | 11 |
| Elec. Prod. (Yorktown) | 36 | 20 |
| | 208 | 87 |
| **RICHMOND** | | |
| Elec. Prod. (Chesterfield) | 108 | 24 |
| (12th Street) | 33 | 9 |
| Trans. & Distr. | 292 | 33 |
| Elec. Substation | 29 | 4 |
| | 462 | 70 |
| **RAPPAHANNOCK** | | |
| Trans. & Distr. | 69 | 5 |
| **ALLEGHENY** | | |
| Elec. Prod. | 4 | 0 |
| Trans. & Distr. | 84 | 6 |
| | 88 | 6 |
| **ALBEMARLE** | | |
| Trans. & Distr. | 67 | 3 |
| **SOUTHSIDE** | | |
| Trans. & Distr. | 121 | 10 |
| **SYSTEM** | | |
| System Motor Vehicle | 64 | 20 |
| System Stores | 102 | 14 |
| System Elec. Salvage | 28 | 11 |
| | 194 | 45 |
| **BLUE RIDGE** | | |
| Trans. & Distr. | 154 | 14 |
| Elec. Prod. (Mt. Storm) | 117 | 1 |
| (Bremo) | 54 | 9 |
| | 325 | 24 |
| **NORFOLK** | | |
| Elec. Substation | 37 | 7 |
| Trans. & Distr. | 305 | 61 |
| Gas Prod. | 4 | 0 |
| Gas Distr. | 73 | 64 |
| Elec. Prod. (Reeves) | 26 | 5 |
| (Portsmouth) | 77 | 20 |
| | 522 | 157 |

The districts in turn are basically divided into two departments: (1) Transmission and Distribution, and (2) Production. The departments are functionally unrelated, separately managed, and are in separate geographic locations. Employees are not interchanged between the two departments, and knowledge and training learned in one department is generally not useful in the other.

PETERSBURG

| | WHITE | BLACK |
|---|---|---|
| Trans. & Distr. | 81 | 10 |
| Elec. Prod. | 30 | 1 |
| | 111 | 11 |

ROANOKE

| | | |
|---|---|---|
| Elec. Prod. | 15 | 6 |
| Trans. & Distr. | 51 | 7 |
| | 66 | 13 |

IBEW bargaining units jobs within the various departments are held by the following numbers of white and black employees:

| | WHITE | BLACK |
|---|---|---|

TRANSMISSION AND DISTRIBUTION

*Lines of Progression*

| | WHITE | BLACK |
|---|---|---|
| Electric Serviceman (1st class) | 116 | 0 |
| Lead Lineman | 118 | 0 |
| Lineman | 380 | 6 |
| Lineman Trainee | 171 | 11 |
| Network Lineman | 34 | 0 |
| Network Lineman Trainee | 8 | 0 |
| Meterman | 53 | 0 |
| Meterman Trainee | 12 | 0 |
| Electrician | 71 | 0 |
| Electrician Trainee | 8 | 0 |
| Line Truck Driver (Auger) | 57 | 4 |
| Line Truck Driver | 11 | 3 |
| Helper | 40 | 3 |
| Groundman | 270 | 112 |
| Concrete Worker | 0 | 0 |
| Truck Driver | 1 | 0 |
| Laborer | 4 | 24 |

TRANSMISSION AND DISTRIBUTION

*Jobs not in a Line of Progression*

| | | |
|---|---|---|
| Utility Electrician | 7 | 2 |
| Meter Tester | 2 | 0 |
| Repairman 1st Class | 0 | 0 |
| Network Installer | 2 | 0 |
| Line Installer | 7 | 0 |
| Tractor Earth Auger Driver | 1 | 0 |
| Rubber Goods Tester | 3 | 1 |
| Crane and Equip. Man | 1 | 0 |
| Meter Installer 2nd Class | 33 | 0 |
| Substation Operator A Sub | 4 | 0 |
| Junior Meter Tester | 3 | 0 |
| Meter Reader | 157 | 10 |
| Collector | 13 | 0 |
| Meter Repairman 1st Class | 1 | 0 |
| Shop Meter Tester | 0 | 0 |
| Meter Repairman 2nd Class | 0 | 0 |
| Electrician Helper | 10 | 0 |
| Helper Underground | 6 | 0 |
| Meter Helper | 3 | 0 |
| Maintenance Man | 18 | 8 |
| Laborer | 0 | 0 |
| Janitor | 0 | 8 |
| Charwoman | 0 | 0 |

ELECTRIC PRODUCTION

*Lines of Progression*

| | | |
|---|---|---|
| Control Room Operator | 16 | 0 |
| Switchboard Operator | 29 | 0 |
| High Pressure Boiler Opr. | 52 | 0 |
| Assistant Control Room Opr. | 17 | 0 |
| High Pressure Turbine Opr. | 19 | 1 |
| Low Pressure Turbine Opr. | 0 | 0 |
| Assistant High Pressure Boiler Opr. | 30 | 0 |
| High Pressure Auxiliary Opr. | 76 | 4 |
| Electrician | 43 | 0 |
| Electrician Trainee | 15 | 1 |
| Mechanic | 92 | 1 |
| Mechanic Trainee | 41 | 2 |
| Machinist 1st Class | 9 | 0 |
| Machinist 2nd Class | 5 | 0 |
| Welder 1st Class | 27 | 2 |
| Welder 2nd Class | 8 | 0 |
| Hydro Operator A | 5 | 0 |
| Hydro Auxiliary Operator | 3 | 0 |
| Coal Equip. Opr. 1st Class | 8 | 7 |
| Operating Helper | 5 | 8 |
| Coal and Ash Handler | 9 | 19 |
| Hydro Helper | 0 | 4 |
| Laborer | 18 | 49 |

ELECTRIC PRODUCTION

*Jobs not in a Line of Progression*

| | | |
|---|---|---|
| Utility Electrician | 7 | 0 |
| Repairman | 7 | 0 |
| Plant Clerk | 0 | 0 |
| Maintenance Helper | 3 | 6 |
| Electrician Helper | 3 | 0 |
| Maintenance Man | 12 | 6 |
| Gateman | 0 | 0 |
| Plant Clerk B | 1 | 0 |
| Charwoman | 0 | 1 |
| Janitor | 0 | 0 |

ELECTRIC SUBSTATION

*Lines of Progression*

| | | |
|---|---|---|
| Electrician | 39 | 0 |
| Electrician Trainee | 6 | 0 |
| Truck Driver | 0 | 2 |
| Laborer | 0 | 3 |

*Jobs not in a Line of Progression*

| | | |
|---|---|---|
| Utility Electrician | 2 | 0 |
| Electrician Helper | 4 | 0 |
| Maintenance Man | 9 | 6 |

GAS DISTRIBUTION

*Lines of Production*

| | | |
|---|---|---|
| Meter Repairman 1st Class | 6 | 0 |
| Meter Repairman 2nd Class | 5 | 1 |
| Helper | 6 | 1 |
| Complaint Man | 39 | 1 |
| Meter Installer and Combination Man | 22 | 1 |
| Helper | 111 | 1 |
| Construction Mechanic | 0 | 10 |
| Gas Fitter | 0 | 10 |
| Construction Machine Opr. | 0 | 13 |
| Pipe Layer | 0 | 25 |
| Materials Truck Driver | 0 | 2 |
| Truck Driver | 0 | 13 |
| Laborer | 0 | 37 |

*Jobs not in a Line of Progression*

| | | |
|---|---|---|
| Gas Service Man | 7 | 1 |
| Equipment Man | 3 | 0 |
| Welder | 0 | 4 |
| Dripman | 0 | 1 |

GAS PRODUCTION

*Lines of Progression*

| | | |
|---|---|---|
| Gas Plant Helper | 0 | 0 |
| Gas Plant Opr. | 6 | 0 |
| Gas Plant Mechanic | 2 | 0 |

SYSTEM ELECTRIC SALVAGE

*Line of Progression*

| | | |
|---|---|---|
| Electrician 1st Class | 4 | 0 |
| Electrician 2nd Class | 10 | 0 |
| Electrician Helper | 6 | 2 |
| Shop Repairman 1st Class | 3 | 0 |
| Shop Repairman 2nd Class | 5 | 1 |
| Helper | 0 | 0 |
| Salvageman | 0 | 4 |
| Laborer | 0 | 4 |

*Jobs not in a Line of Progression*

| | | |
|---|---|---|
| Utilityman | 0 | 0 |

SYSTEM MOTOR VEHICLE

*Line of Progression*

| | | |
|---|---|---|
| Auto Mechanic 1st Class | 32 | 0 |
| Helper | 9 | 5 |
| Auto Mechanic 2nd Class | 14 | 4 |
| Crane Tractor Driver | 2 | 0 |
| Tractor Trailer Driver | 6 | 1 |
| Heavy Freight Driver | 1 | 0 |
| Garageman | 0 | 10 |
| Laborer | 0 | 0 |

SYSTEM STORES

*Lines of Progression*

| | | |
|---|---|---|
| Storekeeper A | 45 | 1 |
| Storekeeper B | 14 | 0 |
| Stock Helper | 39 | 8 |
| Stock Truck Driver | 0 | 2 |
| Storageman | 0 | 4 |
| Storeroom Laborer | 0 | 0 |

Prior to 1967, blacks, with few exceptions, were hired for and assigned to all-black or traditionally black jobs. If assigned to jobs within lines of progression, the lines of progression have been segregated and ones of low opportunity. Traditionally all-black jobs are:

| Job | Department | 1970 Employees White | Black |
|---|---|---|---|
| Hydro Helper | Elec. Prod. | 0 | 4 |
| Construction Mechanic | Gas Distr. | 0 | 10 |
| Gas Fitter | " " | 0 | 10 |
| Const. Machine Opr. | " " | 0 | 13 |
| Pipe Layer | " " | 0 | 25 |
| Materials Truck Driver | " " | 0 | 2 |
| Truck Driver | " " | 0 | 13 |
| Laborer | " " | 0 | 37 |
| Welder (Not in Line of Pro.) | " " | 0 | 4 |
| Dripman " " " | " " | 0 | 1 |
| Salvageman | System Elec. Salv. | 0 | 4 |
| Laborer | " " " | 0 | 4 |
| Garageman | System Mtr. Veh. | 0 | 10 |
| Stock Truck Driver | System Stores | 0 | 2 |
| Storageman | " " | 0 | 4 |

Traditionally predominantly black jobs are:

| Job | Department |
|---|---|
| Operating Helper | Electrical Production |
| Coal and Ash Handler | " " |
| Laborer | " (added to line of prog. 1968) |
| Janitor | " ( " " " " " 1968) |

These predominantly black jobs are segregated in various localities:

| Job | Locality | White | Black |
|---|---|---|---|
| Operating Helper | Peninsula | 0 | 2 |
| | Norfolk (Port.) | 0 | 0 |
| | Norf. (Reeves Ave.) | 0 | 0 |
| | Richmond (12th St.) | 0 | 0 |
| | Potomac | 0 | 0 |
| | Bl. Ridge (Bremo) | 1 | 1 |
| | Bl. Ridge (Mt. Storm) | 4 | 0 |

The inclusion of the foregoing figures is not necessarily intended to show that VEPCO is presently engaged in a pattern or practice of discrimination. The evidence to that effect presently before the Court is inconclusive. Rather, they show the status of VEPCO at the present time, and that status necessarily reflects the result of past acts, for the Court finds from the evidence presently before it that the defendant company has in the past been guilty of discrimination, as evidenced by racial assignment. Negroes, at least up to the past few years, consistently were assigned to laboring or janitorial jobs, or in all black, low opportunity lines of progression. The law in this circuit is that if an employee still suffers the effects of past discriminatory acts, even though the employer's policy may have changed, he is entitled to relief. Griggs v. Duke Power Co., 420 F.2d 1225 (4th Cir. 1970), rev'd. on other grounds, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); United States v. Continental Can Co., 319 F.Supp. 161 (E.D.Va.1970). However, it is evident from the figures that there still remain lines of progression which are all white, and all black, and that most blacks presently occupy the lower wage classifications in the mixed lines of progression.

Transfer, promotion, temporary assignment and demotion are determined at the supervisory level, subject to provisions of the collective bargaining agreement and central review by the Personnel Department in Richmond.

When a vacancy occurs in a job classification other than an entry level job, one of two procedures are implemented in filling the job. Where all employees of the department are in one locality, there is no posting of a job vacancy noti-

fication. However, where the employees in the department are in two or more localities, but still in the same district, a notification of vacancy is posted, and employees may, within ten calendar days, bid for the job. The bidding employee with the greatest seniority in the job most immediately below that of the vacancy is awarded the job, provided he is deemed to possess the requisite skills to adequately perform the duties of the job.

"Seniority" is defined in Art. XI, Section 1.B. of the collective bargaining agreement as "[l]ength of continuous regular assignment in a job classification within a Department." Thus, the seniority system at VEPCO is a combination of job and departmental seniority. When an employee enters a higher job classification he does not carry forward seniority gained in his previous position. The same is true when an employee transfers into a new line of progression or from one department to another.

Vacancies for entry-level jobs and jobs where the department is coextensive with a single locality are not posted for bid. Candidates for such jobs are first chosen from those present employees who have a written job request on file. Requests are kept open for sixty days.[4] Employees in the district where the vacancies occur have priority over employees in other districts.

Order of layoff, recall rights, and order of demotion upon reduction of job force within a line of promotion generally are based upon job and departmental seniority.

The net effect of VEPCO's promotional policy is that any employees who were hired at a time when certain jobs were not open to them because of their race, and who would have been and are presently qualified for those jobs, continue to suffer the effects of that past discrimination in that they remain perpetually beneath their more fortunate colleagues who were hired contemporaneously or even after them when bidding for new jobs.

In 1958, VEPCO instituted a company-wide policy requiring a high school diploma or its equivalent for all persons who wished to be considered for employment or transfer to a job classification outside their present line of progression in any capacity, save a few custodial and laboring jobs in which there were very limited or no lines of progression. Certain laboring and custodial jobs formerly requiring a high school education now only require an eighth grade education.

In 1961, VEPCO instituted a testing program for the IBEW bargaining unit whereby all applicants, black or white, seeking employment at VEPCO or requesting transfer to a job classification outside their present line of progression would be required to pass certain tests in order to be considered. Incumbent employees were not required to meet those requirements in order to retain their jobs or be promoted within their present lines of progression. Since 1961, tests have been continually required. There have been some changes through the years as to which test was required for which job and requisite scores for each, but with the exception of groundmen, only traditionally black or currently-predominantly black jobs have not been subject to testing requirements.

VEPCO has not performed a validation study to determine the relevance of its testing program to those jobs upon which successful completion of said tests are dependent.

Completion of high school does not necessarily determine a person's potential job performance and is not always an indication of successful job performance in collective bargaining agreement jobs. The high school education and testing requirements may have prevented experienced and otherwise qualified employees from transferring from traditionally low opportunity jobs to higher opportunity craft or operating jobs.

The requirement that employees hired prior to the implementation of education

---

4. Notice of vacancies is often obtained by word of mouth.

and testing requirements possess these educational requirements and minimum scores in required tests as prerequisites for promotion or transfer to jobs from which they were previously excluded discriminates against them in that their contemporaries already in the more desirable lines of progression were not required to meet these prerequisites in order to advance.

■ The seniority system, testing program, and educational requirements have effectively locked certain employees into lower paying, lower opportunity jobs, and therefore must be deemed to be discriminatory.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the instant action by virtue of § 707 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–6(b). The Attorney General of the United States is authorized to institute this action on behalf of the United States under § 707(b) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–6(b) to obtain relief against a pattern or practice of resistance on the part of the defendants, if such pattern or practice exists, to the full enjoyment of the rights to equal employment opportunity secured by Title VII of the Civil Rights Act of 1964.

■ Defendant VEPCO is an employer within the meaning of 42 U.S.C. § 2000e(b), and is engaged in industry affecting commerce within the meaning of 42 U.S.C. § 2000e(h). Defendants IBEW and Locals are labor organizations within the meaning of 42 U.S.C. § 2000e(d), and are engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(h). The unions are proper parties because that relief prayed for regarding job seniority, if granted, necessarily affects their contracts with VEPCO.

■ In a case such as this in which injunctive power is authorized by statute, and where it has been shown that a violation of the Act has occurred, as the instant facts so show, then irreparable injury is presumed from the fact of the violation itself, and preliminary relief should, and will, be granted. United States v. Hayes International Corp., 415 F.2d 1038, 1045 (5th Cir. 1969). See also, United States v. Central Carolina Bank and Trust Co., 431 F.2d 972 (1970).[5]

■ VEPCO's practice of assigning and restricting black employees to low-paying jobs and low-opportunity lines of progression constituted racial discrimination against those employees. The system of granting promotions on a basis of job and departmental seniority continues the effect of that past discrimination, and is therefore unlawful in that those employees transferred into new jobs are perpetually beneath white employees who have a shorter length of total service with VEPCO. These white employees have thus been able, solely because of their race, to accumulate seniority on jobs enabling them to progress to higher paying jobs, while qualified black employees, solely because of their race, have been prevented from accumulating such seniority. The present effect of this past practice makes those black employees unsuccessful in bidding against white employees for higher paying, formerly all-white jobs and is therefore a "term, condition or privilege of employment" that discriminates against black employees on the basis of race in violation of 42 U.S.C. § 2000e–2(a). Griggs v. Duke Power Company, 420 F.2d 1225 (4th Cir. 1970), rev'd. on other ground, 400 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (Mar. 8, 1971); Local 189, United Papermakers and Paperworkers v. United States, 416 F.2d 980 (5th Cir. 1969), cert. denied, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970); Quar-

---

5. *Central Carolina* is a Title II case, while the instant proceeding comes under Title VII. However, the statute providing for an injunction under Title II, 42 U.S.C. § 2000a–5(a), is identical to 42 U.S.C. § 2000e–6(a). Further, the Court in *Central Carolina* cited *Hayes* as authority for its holding.

les v. Philip Morris, Inc., 279 F.Supp. 505 (E.D.Va.1968).[6]

■■ The continued use by VEPCO of the job and departmental seniority system currently in effect is unlawful because black employees who seek transfer from traditionally black jobs are forced to forfeit promotional security and in most cases suffer wage reductions. Local 189, United Papermakers and Paperworkers v. United States, *supra;* United States v. Continental Can Co., *supra* at 166. Further, by making and enforcing a collective bargaining agreement with VEPCO which provides for discriminatory job and departmental seniority systems, defendants IBEW and Locals have violated 42 U.S.C. § 2000e–2(c). Local 189, United Papermakers and Paperworkers v. United States, *supra.* Policies and practices which are racially neutral on their face are, nevertheless, unlawful if they tend to perpetuate the effects of past discrimination. United States v. Dillon Supply Company, 429 F.2d 800 (4th Cir. 1970).

■ Title VII requires that the opportunity to hold jobs be made available to all employees without regard to race. So long as there are institutional systems or procedures which deny blacks advancement to better paying, more desirable jobs which are held by whites with comparable plant seniority and ability, this legal obligation is not satisfied. However, VEPCO is not required to forego its legitimate interest in maintaining the skill and efficiency of its labor force. Yet, any structural impediments which delay or bar the attainment by qualified blacks of jobs generally as good as those held by their white contemporaries, or which force blacks to pay a price for those opportunities, must by law be removed. 42 U.S.C. § 2000e–2(a); Griggs v. Duke Power Co., *supra;* Local 189, United Papermakers and Paperworkers

v. United States, *supra;* United States v. Continental Can Co., *supra;* Quarles v. Philip Morris, Inc., *supra.*

Hence, VEPCO and the IBEW and Locals will from this day forth be preliminarily enjoined to consider employees for transfer on an employment or district wide seniority basis, rather than by job and departmental seniority. Of course, the law does not require nor is VEPCO expected to place an unqualified employee into a particular job classification. Further, any employee who transfers into a line from which he was previously excluded because of past policy shall not be forced to suffer a loss of wages, nor a loss of seniority benefits. This means that when such an employee transfers, if his wages were higher than that prescribed for his new job, he shall remain at the prior wage level, and receive such increments as he would have received in his former position. Further, he shall compete for future promotions on an employment or district seniority basis, rather than departmental or job seniority basis, provided that VEPCO shall not be compelled to promote him unless and until he is qualified for such promotion.

The requirement that employees hired before September 6, 1958, possess a high school education as a prerequisite for promotion, and that employees hired prior to July 26, 1961, take and achieve minimum scores on aptitude tests as a prerequisite for promotion or transfer, are discriminatory as to those employees in that others hired at the same time into the preferred classifications were not subjected to those requirements and are thus "terms, conditions, or privileges" violating 42 U.S.C. § 2000e–2(a). Griggs v. Duke Power Co., *supra.* As to these employees, the proper remedy is abolition of the requirements as prerequisites to promotions, and VEPCO will be so preliminarily enjoined. These

6. Beginning in 1968, VEPCO began to hire both blacks and whites, in substantial numbers, into the newly created classification of "groundmen." Also, in 1969, VEPCO began to hire some blacks into theretofore traditionally white jobs. Any relief presently granted would not affect those employees as there is no evidence that they have suffered discrimination.

employees are entitled to progress on the basis of employment or district seniority, and with the same privileges as those outlined above. *Id.*

Further, it has not been shown that high school education and the testing requirements imposed are indicative of successful job performance. Therefore, where these requirements above operate to exclude employees hired subsequent to their institution from transferring to other lines of progression, they must be preliminarily enjoined. *Griggs v. Duke Power Co., supra.* Too, where these employees were prevented from progressing due to the high school requirement, they shall enjoy all the benefits previously outlined.[7]

An appropriate order will enter.

## ORDER

In accordance with the memorandum of the Court this day filed, it is adjudged, ordered and decreed that the defendants, Virginia Electric and Power Company (VEPCO), the International Brotherhood of Electrical Workers (IBEW), Local Unions 216, 220, 279, 655, 699, 905, 980, and 1064 of the IBEW (Locals), and their respective officers, agents, representatives, members, employees, successors, and all other persons and organizations in active concert and participation with them be, and they are hereby, preliminarily enjoined and restrained, during the pendency of this action, from discriminating against employees of VEPCO in violation of Title VII of the Civil Rights Act of 1964 as follows:

## I.

## GENERAL

The defendants, their agents, officers, employees, and successors in interest and all persons in active concert or participation with any of them are preliminarily enjoined from engaging in the acts or practices hereinafter described which have the purpose or effect of:

A. Failing or refusing to promote, upgrade, or assign any individual hereinafter described, discharging any such individual, or otherwise adversely affecting his status as an employee because of such individual's race or color;

B. Limiting, segregating, or classifying defendant's employees herein described in any way which would deprive or tend to deprive them of equality in the terms, conditions, privileges, and opportunities of his or their employment because of their race or color;

C. Engaging in any of the acts or practices hereinafter described which have the purpose or effect of discriminating against any individual herein described because of his race or color, or which perpetuate or tend to perpetuate the discriminatory effects of practices which in the past may have had the effect of discriminating against individuals because of their race or color; and

D. Discriminating or retaliating in any manner against any employee or applicant who has furnished information or participated in any respect in the in-

---

7. *Griggs* compels this holding by virtue of its requirement that tests given must be shown to be job related. VEPCO has made no such showing. However, VEPCO is currently conducting a study of their testing procedures and should the results be that the tests are relevant indicators of job performance at any level, no matter how far removed from the entry level classification, the Court is of the opinion that *Griggs* requires the taking of further evidence with an eye toward appropriate modifications of its order. The Court is also aware that no indicia of proper bases for determining job qualification has been set out by the Supreme Court, thereby leaving such problems to the employer. It would appear, therefore, that VEPCO could set up such standards as it deems appropriate, subject, of course, to the United States disapproving, an event to be met when, and if it occurs.

vestigation of the defendants' employment practices in connection with this action.

## II.

## AFFECTED CLASS

A. The Affected Class shall include all employees who were initially assigned to the jobs of laborer, janitor, charwoman or one of the following other job classifications with wages and responsibilities commensurate with laborers jobs or which have been traditionally black, low paying jobs:

> Ashman
> Coal Handler
> Dripman
> Fireman
> Garageman
> Hydro Helper
> Salvageman
> Storageman
> Storeroom Laborer
> Truck Driver

## III.

## PROMOTION, TRANSFER, DEMOTION AND LAYOFFS

A. The defendants are hereby enjoined from applying as one of the prerequisites for promotion or transfer that employees have a high school diploma or its equivalent, or that employees have taken and achieved a satisfactory score on aptitude tests administered by VEPCO.

B. The defendants are hereby enjoined from applying the system of job and departmental seniority prescribed by the collective bargaining agreement for the purposes of determining who among the employees otherwise eligible shall be temporarily or permanently promoted, transferred, demoted or laid off whenever one or more of the employees otherwise eligible is a member of the Affected Class.

C. The defendants are further enjoined from failing or refusing to implement, in place of the system of job and departmental seniority, a system of district or employment seniority for purposes of determining the senior employee in cases of promotion, transfer, demotion and layoff, in all circumstances in which one or more of the competing employees are members of the Affected Class. In such cases, the total length of service with VEPCO of all persons bidding on the job who are otherwise eligible shall be used to determine the senior bidder.

## IV.

## NOTICE TO AFFECTED CLASSES

VEPCO shall give notice to all employees affected hereby by posting in a conspicuous place where such employees work: (1) a written explanation of the purport of this decree; (2) a listing of all job vacancies within the IBEW bargaining unit, by districts, with a description of each job and the duties to be performed. Bidding for jobs shall take place in the manner set forth by the bargaining agreement, as shall all future notices of job vacancies.

## V.

## WAGES

At no time shall an employee affected hereby who has transferred pursuant to this order be paid at a lower rate than the rate for the job from which he transferred. He shall further continue to receive those increments he would have received had he remained in his prior job classification. This shall continue until he reaches that level in his current line of progression wherein the rates of pay are equal. He shall then progress according to rates of pay in his current line of progression.

## VI.

## QUALIFICATION AND TRAINING

In all other respects, employees affected hereby shall qualify and receive

training for jobs in the same manner as all other employees of VEPCO.

In the event any affected employee shall not qualify for a job transfer the reasons shall be recorded in his personnel record.