Davine ALEXANDER, et al., Plaintiffs,

v.

**LOCAL 496, LABORERS INTERNATIONAL UNION OF NORTH AMERICA, et al., Defendants.**

No. C84–3916.

United States District Court,
N.D. Ohio,
Eastern Division.

March 28, 1994.

---

Edward G. Kramer, Kramer & Tobocman, Cleveland, OH, for plaintiffs.

Alan S. Belkin, Shapiro, Turoff & Belkin, Cleveland, OH, for defendant Local 496 Laborers' Intern. Union of North America.

Eben O. McNair, Schwarzwald & Rock, Cleveland, OH, for Laborers' Intern. Union of North America.

### MEMORANDUM OF OPINION AND ORDER

HEMANN, United States Magistrate Judge.

This case is before the magistrate judge pursuant to an order of reference issued by Chief Judge Lambros on January 31, 1994. Pending before the magistrate judge is defendant Laborers' International Union of North America's ("the International Union") motion for reconsideration. The magistrate judge has considered the parties' briefs and oral arguments with respect to the motion for reconsideration. For the reasons stated below, the magistrate judge overrules the motion.

### I. PROCEDURAL BACKGROUND OF THE CASE

The matter before the court arises from the consolidation of three civil rights cases filed in 1984 pursuant to 42 U.S.C. section 2000e, *et seq.* ("Title VII") and 42 U.S.C. section 1981. Plaintiffs are a certified class of black persons who allege that the Laborers' International Union of North America, Local 496 ("Local 496") and Floyd B. Conrad, Business Manager for Local 496, denied them union membership and employment opportunities on the basis of their race. Plain-

tiffs had sought union membership in order to obtain laborer positions available during the construction and subsequent operation of the Perry Nuclear Power Plant ("Perry"). The International Union was brought into the case with the same charges in 1990 when the Court (Judge Alvin I. Krenzler) granted plaintiffs' motion for joinder.[1]

Local 496 filed a motion for summary judgment which Judge Krenzler denied on March 25, 1987. The Judge's memorandum of opinion is set forth in *Alexander v. Local 496, Laborers' Int'l Union,* 655 F.Supp. 1446 (N.D.Ohio 1987) (*"Alexander I"*).

On March 25, 1987 Judge Krenzler granted a motion to bifurcate the trial between liability and damages. Trial on the issue of liability was originally scheduled for January 9, 1989 but twice rescheduled. The court took evidence during a 14 day trial spread over a two and one-half month period in the spring of 1991. On December 10, 1991 Judge Krenzler found that Local 496 and the International Union were liable for discriminatory employment practices. Specifically, the Judge found that: plaintiffs' charges of discrimination were timely filed with the Equal Employment Opportunity Commission ("EEOC"); plaintiffs timely filed their actions with the court after receiving their right-to-sue notification; two union policies, one requiring an applicant to be "in the calling" prior to admission to the union and the other being the referral of only union members for jobs, had a disparate impact on black applicants and did not justify the statistical underrepresentation of blacks in the union; black applicants made a sufficient showing of disparate treatment by Local 496; and the International Union could be held liable under either an agency theory or under the theory that it had breached its affirmative duty to oppose the discriminatory practices of an affiliate union. *Alexander v. Local 496, Laborers' Int'l Union ("Alexander II"),* 778 F.Supp. 1401 (N.D.Ohio 1991).

On January 22, 1992 the International Union moved for reconsideration of *Alexander II* or, alternatively, for a 28 U.S.C. section 1292(b) certification for immediate appeal. On January 23, 1992 Local 496 filed a motion for an order to take an immediate appeal under section 1292(b). Judge Krenzler overruled Local 496's motion for an immediate appeal on February 28, 1992. Subsequently, on March 2, 1992, Judge Krenzler denied the International Union's motion for reconsideration and motion for immediate appeal. Local 496 filed a motion for reconsideration of its motion for an order to take immediate appeal. Judge Krenzler, just a few days before his retirement, granted Local 496's motion for reconsideration of its request for section 1292(b) certification on July 1, 1992. The Court of Appeals for the Sixth Circuit denied the petitions for permission to appeal on August 19, 1992.

On August 30, 1993 the International Union filed the pending motion for reconsideration or clarification of *Alexander II.*

## II. LAW OF THE CASE DOCTRINE

Defendant International Union's motion for reconsideration is governed by the principles of the law of the case. The Supreme Court has defined law of the case as follows:

Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.... It is clear that res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment. Nevertheless, a fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive.

*Arizona v. California,* 460 U.S. 605, 618–19, 103 S.Ct. 1382, 1391–92, 75 L.Ed.2d 318, *reh'g denied* 462 U.S. 1146, 103 S.Ct. 3131, 77 L.Ed.2d 1381 (1983) (citations omitted). "The law of the case will be disregarded only when the court has 'a clear conviction of error' with respect to a point of law on which

---

1. On January 17, 1990, the opening day of trial, Local 496 filed a motion to dismiss for want of an indispensable party, the International Union. The trial was continued indefinitely when plaintiffs' motion for joinder was granted.

its previous decision was predicated." *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981), *cert. denied sub nom Currier v. Fogel*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982) (citations omitted). *Accord Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F.Supp. 1328, 1336 (N.D.Ohio 1981).

The International Union sets forth a number of what it believes to be egregious legal errors made by Judge Krenzler in *Alexander II*. The magistrate judge has evaluated these purported errors under the "clear conviction of error" standard required by the law of the case doctrine. For the reasons more fully set forth below, the magistrate judge finds that none of the conclusions of law set forth by Judge Krenzler and questioned by the International Union constitute clear legal error or require the reconsideration of this Court.[2]

## III. THE LEGAL ERRORS ALLEGED BY THE INTERNATIONAL UNION

A. *"There was no Continuing Violation During the Statute of Limitations Period"*

■ As Judge Krenzler noted in his denial of Local 496's motion for summary judgment, "The general statute of limitations rule for Title VII is that the person alleging a violation of Title VII must file a charge with the EEOC within one hundred and eighty (180) days of the alleged violation." *Alexander I, supra*, 655 F.Supp. at 1448; 42 U.S.C. § 2000e–5(e). A major exception to this general rule occurs when plaintiffs allege harm arising from a *policy of discrimination* held by the defendant or injury from a *series* of discriminatory acts performed by the defendant. The occurrence of such a "continuing violation" allows the 180 days (two years for 42 U.S.C. § 1981) statute of limitations period to *begin running anew* each day that the discriminatory policy is in effect. As Judge Krenzler stated in his order denying Local 496's motion for summary judgment, "Each day that the policy [of discrimination] contin-

ues is considered a separate discriminatory act. Therefore, the statute of limitations begins anew each day that the discriminatory policy remains in existence." *Alexander I, supra*, 655 F.Supp. at 1449–50. *See Bazemore v. Friday*, 478 U.S. 385, 395, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986); *E.E.O.C. v. Penton Indus. Pub. Co.*, 851 F.2d 835, 838 (6th Cir. 1988); *Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir.1987).

■ "The continuing violation doctrine is a judicially-created theory that courts use to toll or extend the applicable statute of limitations when the defendant's violation of federal law is deemed to be continuing in nature." Robert J. Reid, Comments: *Confusion in the Sixth Circuit: the Application of the Continuing Violation Doctrine to Employment*, 60 U.Cin.L.Rev. 1335, 1335 (1992). Under the continuing violation theory, a charge of discrimination is timely filed as long as there is a discrete act against the plaintiff and he or she has filed an EEOC charge within 180 days of the last date that a discriminatory policy was in effect. In the instant case, Judge Krenzler found that a continuing policy of discrimination occurred at least until January 1990.[3] *Alexander II, supra*, Finding of Fact 58, 778 F.Supp. at 1415. Under the continuing violation theory, therefore, any action against Local 496 would have fallen within the statute of limitations period for Title VII if it was filed after the first discrete incident of discrimination in August 1982, *Alexander I, supra*, 655 F.Supp. at 1448, and before July 1990. The statute of limitations for 42 U.S.C. section 1981 actions would extend two years beyond the date a discriminatory policy was last in effect.

The magistrate judge finds no legal error which would justify overturning Judge Krenzler's conclusion of law that "charges of discrimination were timely filed with the EEOC ... [and plaintiffs] timely filed their complaint." *Alexander II, supra*, Conclusion of Law 3, 778 F.Supp. at 1416.

**2.** The Court will not review Judge Krenzler's findings of fact.

**3.** The International Union has not convinced the magistrate judge that the October 1987 referral

policy was nondiscriminatory, especially given Judge Krenzler's reliance on the testimony of Conrad and Judge Krenzler's conclusions about the policy after hearing all of the evidence.

B. *"The International Union Cannot be Held Liable under an Agency or Affirmative Duty Theory"*

■ Judge Krenzler, after hearing all of the evidence, determined that since March 1985 an agency relationship existed between Local 496 and the International Union with respect to referral of union and non-union members for jobs at Perry. The Judge also found that the International Union was aware of discrimination charges filed against Local 496. The International Union was on notice of charges because the business manager of Local 496 had informed International Union Regional Representatives Thomas J. Arconti and Charles Sutton who, in turn, notified the International Union's General President of the charges. Further, the International Union had its own arrangement with the EEOC under which the EEOC forwarded to the International Union copies of charges filed against affiliated locals, including Local 496. Judge Krenzler found that the International Union was under a legal obligation pursuant to the National Maintenance Agreement and the AFL–CIO Constitution, as well at Title VII, to insure that its affiliate local unions did not engage in discriminatory practices. He further found that the International Union had the power and authority to intervene in the affairs of its affiliate local union to eliminate discriminatory activities. The International Union was aware of discriminatory activities taking place in Local 496 since May of 1983. The International Union refused to investigate charges against Local 496 and did not take any action to eliminate the illegal action. *Alexander II, supra,* Findings of Fact 60–71, 778 F.Supp. at 1415–16.

Judge Krenzler concluded that the International Union could be held liable for the discriminatory practices of Local 496 under two legal theories. He determined that the International Union, which was in an agency relationship with Local 496, acquiesced in Local 496's discriminatory practices and as a result became liable for those actions. Judge Krenzler also concluded that the International Union was under an affirmative duty to oppose the discriminatory practices of Local 496. The International Union was found liable under this second theory because it failed to discharge its affirmative duty to take corrective action against Local 496's discriminatory practices. *Alexander II, supra,* Conclusions of Law 30, 32, 778 F.Supp. at 1420–21.

The International Union asks this Court to find that Judge Krenzler's legal conclusions with respect to the International Union's liability under an agency or affirmative duty theory represents clear legal error. For the reasons set forth below, the magistrate judge declines to so find.

### 1. Liability Under Agency Theory

■ An international union can be held vicariously liable for the discriminatory acts of its affiliate local union when the international and local are in an agency relationship. *Berger v. Iron Workers Reinforced Rodmen Local, 201,* 843 F.2d 1395, 1429–30 (D.C.Cir. 1988), *clarified on reh.,* 852 F.2d 619 (D.C.Cir.), *cert. denied,* 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1018 (1989); *Kaplan v. Int'l Alliance of Theatrical, etc.,* 525 F.2d 1354, 1360 (9th Cir.1975). Thus "an agency relationship between the International and [the local union] with respect to the particular discriminatory practices in issue is both a necessary and a sufficient basis for holding the International liable under a theory of disparate impact under Title VII...." *Berger, supra,* 843 F.2d at 1430. Liability under 42 U.S.C. section 1981 requires that the plaintiff prove discriminatory intent. Applying the teachings of *United Mine Workers v. Coronado Coal Co.,* 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922), and *Carbon Fuel Co. v. United Mine Workers,* 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979), the court in *Berger* held that "an international union may be liable under section 1981 if, with knowledge of the surrounding circumstances, it authorizes, ratifies, or approves a local's actions the effects of which are sufficient to establish a claim of intentional discrimination against the local." *Berger, supra,* 843 F.2d at 1430.

Under *Berger* it is clear that the International Union can be held liable under agency theory for the discriminatory acts of Local 496 which violated Title VII. Moreover, because the International Union had knowledge

from the EEOC of the surrounding circumstances of Local 496's discriminatory activities, had negotiated and signed the collective bargaining agreement which provided for referrals to Perry and acquiesced in Local 496's discriminatory activities, the International Union can be held liable under 42 U.S.C. section 1981. *See Robinson v. Laborers' Int'l Union, Local No. 496,* No. C88–1217, 1989 WL 162783, 1989 U.S.Dist. LEXIS 16314 (N.D.Ohio Oct. 20, 1989).

The International Union cites law to the effect that a parent body is not vicariously liable for the acts of its affiliates merely by reason of their affiliation. The proposition of law cited by the International Union is well-settled but is not applicable in the instant case. In *Carbon Fuel* the Court asked "whether an international union, *which neither instigates, supports, ratifies, nor encourages* "wildcat" strikes engaged in by local unions in violation of a collective-bargaining agreement, may be held liable in damages . . . ." 444 U.S. at 213, 100 S.Ct. at 412 (emphasis added). Under the facts of *Carbon Fuel* the Court determined that the international union should not be held liable. Similarly, after a fact based analysis, the Sixth Circuit found a national labor union not liable for the secondary boycott, prohibited by the National Labor Relations Board, of one of its locals. *Buckeye Power Inc. v. Util. Workers Union,* 607 F.2d 759 (6th Cir.1979). *See also Shimman v. Frank,* 625 F.2d 80 (6th Cir.1980); *United Steelworkers v. Lorain, a Div. of Koehring Co.,* 616 F.2d 919 (6th Cir. 1980).

In the cases cited by the International Union there is no agency relationship existing between the international and its affiliate local with respect to the challenged activity. In contrast, the local union in the instant case was an agent of the International Union. *Alexander II,* Finding of Fact 64, 778 F.Supp. at 1415. The International Union had knowledge of the surrounding circumstances of Local 496 via its contacts with the EEOC and communications from regional officials of the International Union. Moreover, the International Union had negotiated and signed the agreement which authorized Local 496 to act as its agent when referring individuals to work at the Perry site. Finally, and most importantly, the International Union acquiesced in the discriminatory activities of Local 496.

The magistrate judge cannot conclude that Judge Krenzler's holding that the International Union was liable for the discriminatory acts of Local 496 under an agency theory constitutes clear legal error.

### 2. Liability Under Affirmative Duty Theory

In some circumstances a union may have an affirmative duty to oppose discrimination perpetuated by employers against its membership.[4] *Bonilla v. Oakland Scavenger Co.,* 697 F.2d 1297, 1304 (9th Cir.1982), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 838 (1984). "If [the union] acquiesced or joined in the Company's discriminatory practices, it too is liable to the injured employees." *Id.* Failure of an international union to take action after becoming aware of discrimination resulting from a collective bargaining agreement also has been held to constitute a Title VII violation. *Kaplan v. Int'l Alliance of Theatrical, etc., supra,* 525 F.2d at 1360, *citing United States v. Virginia Elec. and Power Co.,* 327 F.Supp. 1034, 1042 (E.D.Va.1971); *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979, 989 (D.C.Cir. 1973). An international union can be held

---

4. Title VII addresses the duties of labor organizations explicitly:

(c) It shall be an unlawful employment practice for a labor organization—

1. to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

2. to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

3. to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e–2(c)(1)–(3).

liable for maintaining racially neutral practices which serve to perpetuate an employer's racially discriminatory policies. *Myers v. Gilman Paper Corp.*, 392 F.Supp. 413, 422–23 (S.D.Ga.1975), *aff'd in part, rev'd in part*, 544 F.2d 837 (5th Cir.1977), *cert. dismissed*, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977) ("A union's duty, in representing its members and protecting them from invidious treatment, must certainly be broader then simply refusing to sign overtly discriminatory agreements"). In *Sinyard v. Foote & Davies Div. of McCall Corp.*, 577 F.2d 943, 945 (5th Cir.1978), the court found, "As a general proposition ... international labor unions must bear a heavy responsibility in giving effect to the remedial provisions of both Title VII and the Equal Pay Act." Finding further that the international union's duty was "not absolute," the court adopted common law agency principles to determine, under the facts of each case, when an international union would be held liable for discriminatory actions of an affiliated local. *Id.*

Depending on the facts of the particular case, an international union may have an affirmative duty to oppose the discriminatory activities of one of its locals. *Berger, supra*, 843 F.2d at 1429. In the instant case, the International Union was clearly on notice of the discriminatory activities of Local 496. Moreover, the International Union was in an agency relationship with Local 496. The magistrate judge does not find clear legal error in Judge Krenzler's holding that the International Union had an affirmative duty to oppose the discriminatory practices of Local 496.

C. *"Plaintiffs were on Notice of the New Referral System"*

■ The International Union contends that it has no liability for alleged discriminatory actions after the revised referral policy was put into effect in 1987 because counsel for plaintiffs was aware of the policy. Judge Krenzler disagreed.

On or about January 22, 1990 class members Ronald Colvin ("Colvin") and Art Tomblin ("Tomblin") appeared at Local 496's hiring hall seeking referral for employment. Pursuant to the October 1987 referral policy,

the union representative asked Colvin and Tomblin to sign their names on the out-of-work list. They were 92nd and 93rd on the list at the time they signed up. On or about February 1, 1990 the union secretary prepared a new out-of-work list. Deleted from the February 1990 list were those individuals named on the January list who had received referrals for employment or had failed to notify Local 496 of their continued interest in a referral within the last thirty days. As a result of these deletions, Colvin and Tomblin were moved to positions 65 and 66 on the list.

The secretary responsible for preparation of the March 1990 list dropped Colvin and Tomblin from the roster because they had failed to notify Local 496 of their continuing interest in referral for employment. According to defendants, had Colvin and Tomblin indicated their continuing interest, they would have remained on the roster and been referred for work in May of 1992.

Defendant International Union asserts that knowledge of the October 1987 referral policy re-registration requirement must be imputed to Colvin and Tomblin because a copy of the policy setting forth the requirement was given to the attorney for the class. The attorney received a copy of the new referral policy sometime prior to August 30, 1989. Relying on *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); and *Smith v. Ayer*, 101 U.S. 320, 25 L.Ed. 955 (1880), the International Union asks this court to find as a matter of law that Colvin and Tomblin were informed of, but breached, the re-registration requirement contained in the October 1987 referral policy. The International Union asks this court to further find that because their attorney had notice of the re-registration requirement, no incident of discrimination occurred when Colvin and Tomblin applied for referral for employment in January of 1990.

Plaintiffs counter the International Union's argument by citing Judge Krenzler's finding that:

As late as January 1990, Mr. Conrad, other officers of Local 496, and subordinate em-

ployees have failed to instruct class members inquiring about membership or job referrals how this alleged *new* referral plan works. For instance, class members were not told that they needed to contact the local monthly in order to keep their names on the list. This had the effect of denying them opportunities to be referred to jobs.

*Alexander II, supra,* Finding of Fact 58, 778 F.Supp. at 1415. Plaintiffs also assert that nothing in the record suggests the union representative who asked Colvin and Tomblin to sign the out-of-work list knew that they were class members who would learn of the re-registration requirement from their attorney. Moreover, plaintiffs argue that it is undisputed that members of Local 496, unlike their non-union counterparts, had been informed of the re-registration requirement at union meetings and had access to a copy of the referral policy posted in an "off-limits" area of the hiring hall where out-of-work members played cards. New applicants did not have access to union meetings or the back room where the policies were posted. Finally, plaintiffs argue that the testimony of Mr. Conrad indicates he had no intention of referring non-members for employment under any circumstances.

Based on testimony at trial, Judge Krenzler determined that "the evidence in this case demonstrates that minority persons were not informed of Local 496's procedures for membership and referral for jobs." *Alexander II, supra,* Conclusion of Law 23, 778 F.Supp. at 1419. The October 1987 referral system was instituted at least in part to correct deficiencies in the previous referral systems which led to disparate and untoward employment opportunities for black non-union members. The International Union's assertion of a technical notice requirement does not comport with the remedial nature of the 1987 referral system. It is not difficult to imagine that had it been the intent of Local 496 to make employment opportunities equally available to union and non-union applicants alike, it would have implemented this desire by making the new referral rules readily available and/or making at least one telephone call to prospective workers reminding them of the necessity of their continuing re-registration.

For all the above reasons, the magistrate judge finds that it was not clear legal error for Judge Krenzler to have determined that minority persons were not informed of Local 496's procedures for membership and referral for jobs under the 1987 policy. Similarly, it was not clear legal error for the Judge to have concluded that the withholding of this information was part of a pattern or practice of discrimination which constituted an unlawful employment practice.

## IV. CONCLUSION

For the above stated reasons, the magistrate judge overrules defendant International Union's motion for reconsideration.

IT IS SO ORDERED.