**Robert GIBSON, Jr., Plaintiff,**

v.

**U. S. IMMIGRATION & NATURALIZATION SERVICE, et al., Defendants.**

**No. 82 Civ. 0540 (CBM).**

United States District Court,
S. D. New York.

Feb. 26, 1982.

Mackell & Robertson, Forest Hills, N. Y., for plaintiff.

John S. Martin, Jr., U. S. Atty., S. D. New York by Michael D. Patrick, Sp. Asst. U. S. Atty., New York City, for defendants.

## OPINION

MOTLEY, District Judge.

Plaintiff herein requests a preliminary injunction pursuant to Section 706(g) of the Civil Rights Act of 1964, as amended, (the Act), 42 U.S.C. § 2000e–5(g). This section provides for injunctive relief if a respondent has intentionally engaged in an unlawful employment practice charged in the complaint. In the instant case, plaintiff seeks to enjoin his employer, the Immigration and Naturalization Service (INS), from effecting a job reassignment which he claims was discriminatory and designed to harass him in violation of his Title VII rights.

On February 5, 1982, Judge Cannella granted plaintiff's application for a temporary restraining order pending a determination of plaintiff's motion for a preliminary injunction. Subsequently, the case was reassigned to this court. On February 9 and 11, 1982, hearings were held on plaintiff's preliminary injunction application. The temporary restraining order was extended for an additional ten days in order to give the parties an opportunity to submit proposed findings of fact and conclusions of law. Having now had an opportunity to consider the papers submitted on both sides, the court has determined to grant plaintiff's request for preliminary injunctive relief.

*Findings of Fact*

Plaintiff Robert Gibson, Jr., has been employed by the federal government since 1969 (Tr.10). In 1978, he was hired as a Criminal Investigative Trainee at the INS (Tr.8, 10–12). After he was hired, he attended training school in Georgia for five and one half months. There, he received instruction in Spanish, Immigration Law, Investigative Techniques, Report Preparation, Rules of Evidence and Handling of Firearms (Tr.12).

In or about October, 1978, plaintiff filed the first of some fourteen complaints with the Equal Employment Opportunity Commission (EEOC). He alleged that the INS was discriminating against him on the basis of race in violation of Title VII of the Act.

In June, 1979, plaintiff was served with a Notice of Proposed Removal by the INS which alleged various instances of misconduct. Plaintiff then appealed his discharge to the Merit Systems Protection Board (MSPB). On May 8, 1980, after two hearings, the MSPB reversed the INS' decision to discharge plaintiff. It found that the INS had discharged Mr. Gibson in retaliation for his having engaged in protected EEO activities (Tr.31). It also found that the INS had failed to support its charges by a preponderance of the evidence. Plaintiff was awarded eleven months back pay and all material relating to his discharge was deleted from his personnel file.

Upon his return to work in July, 1980, plaintiff was assigned to the Alien Processing Unit of the General Investigations Section of the INS New York City office. He thereafter began a six months intensive training course in Spanish which consumed approximately twenty hours per week of his work time. While in the Processing Unit, plaintiff worked under a supervisor and acting supervisor, Mr. Joseph J. Walla and Mr. Charles M. Turso.

In an evaluation memorandum dated November 17, 1980, Mr. Walla submitted an evaluation of Mr. Gibson's performance from July 31, 1980 through October 31, 1980. The evaluation stated, *inter alia*, that his overall performance was "above satisfactory." Mr. Walla testified to the same effect at the hearing on plaintiff's preliminary injunction application (Tr.82–83). Mr. Turso also testified at the preliminary injunction hearing that Mr. Gibson performed his duties "in a satisfactory manner" and that his overall performance "was good" (Tr.86). Neither Mr. Walla nor Mr. Turso has worked with plaintiff since December, 1980 (Tr.86–87).

Plaintiff filed another EEO complaint in November, 1978. The complaint alleged harassment by fellow investigators at the Fort Hamilton Pistol Range to which plaintiff had been assigned (Pl's Exh. 1). Plaintiff also alleged that on several occasions a fellow Criminal Investigator (CI) made de-

rogatory statements about plaintiff's performance as a trainee and, following a confrontation with this CI, that three of plaintiff's co-workers wrote memoranda indicating they no longer wished to work with plaintiff. It was plaintiff's contention that: 1) his supervisory personnel accepted the CI's version of the confrontation, making it a part of plaintiff's personnel file and; 2) that the memoranda were written at the behest of plaintiff's supervisor. In a decision rendered in September, 1980, (which was dated April 1, 1981), Squire Padgett, EEO Complaint Adjudication Officer for the Department of Justice, sustained plaintiff's complaint (Tr.23, 66). He found, *inter alia*, that "an examination of the evidence . . . sustain[s] [plaintiff's] allegation that the Hamilton Range incident constituted an instance of impermissible governmental employment practice, e.g., retaliatory harassment, albeit subtle, in violation of Title VII of the Civil Rights Act of 1964, as amended in 1972" (Opinion of Squire Padgett, pp. 11–12).

In January, 1981, plaintiff was placed under the supervision of Mr. William Slattery. In March, 1981, he took a written Spanish test which was required by the Criminal Investigative Training Program (CITP). On April 8 and 9, 1981, plaintiff was administered one written and one oral Spanish test, both of which he failed. After failing the ten-month Post-Academy Spanish Examination, he was given a 90 day training extension under the CITP. On July 22, 1981, he failed another written test. In April, 1981, Mr. Gibson filed a Union Grievance alleging that the Spanish tests administered to date had been unfair. He also claimed that he had actually passed the exams but was given a failing grade as a form of harassment by the INS in retaliation for his EEO activities (Tr.33–35; 70–74). As part of the Grievance, he claimed that because the April 9, 1981 oral examination was administered by the sister of his third-line supervisor, Mr. Slattery, it was inherently unfair (*Id.*).

Plaintiff's Grievance was denied on December 9, 1981 and Mr. Gibson did not appeal (Tr.73–74). The Arbitrator cited the opinion of an independent Spanish instructor that plaintiff's performance was unsatisfactory upon a review of the exams.

On May 11, 1981, while plaintiff's Grievance was pending, he filed another EEO Complaint (Complaint # 4) (Tr.69–70). The complaint alleged discrimination and reprisal in the form of harassment, the failure to re-assign him, and the manner in which the Spanish test was administered. Since May 11, 1981, plaintiff has filed approximately ten other EEO Complaints, alleging, *inter alia*, verbal harassment, racial slurs by his supervisor, being assigned to work in a high crime area without a partner, a proposed reprimand, being ordered to work with Investigators who have refused to work with him in the past, and other instances of reprisal. These complaints have been consolidated for investigation and adjudication. The present status of Complaint # 4 is that it is pending until completion of the consolidated investigation which has been commenced (Tr.97–98).

On or about January 28, 1982, plaintiff received a letter from Roger Woods, Assistant Regional Commissioner for Personnel of the INS (the Woods letter), informing him that he was being transferred from his position as Criminal Investigator to that of Contact Representative in the same office. The transfer was to become effective February 7, 1982. The letter cited the following reasons for the transfer: plaintiff's failure to pass the Spanish language tests; his inadequate working knowledge of immigration law, investigative procedure and techniques; his inability to write acceptable investigative reports; and the findings and recommendations of the Regional Probationary Board which reviewed plaintiff's overall performance and concluded that it was not acceptable (Woods letter, p.2; Tr. 109–112). Plaintiff claims, however, that the transfer is in reality another form of retaliatory harassment consistent with the agency's past treatment of him.

Although the position to which plaintiff would be reassigned is a lateral move in

terms of salary and benefits, (Woods letter, p.3; Tr.113), plaintiff contends that it is really a demotion. He claims that he will suffer a monetary loss of $183.00 bi-weekly, because he would no longer be eligible for administratively uncontrolled overtime presently available only to law enforcement officers (Tr.38). Plaintiff further contends that the Contact Representative position does not have the promotional opportunities available in the Criminal Investigator position (Tr.39). The court finds that notwithstanding the fact that the re-assignment would be without loss of grade or employee benefits, it can be considered a demotion or transfer to a lower level position as plaintiff argues.

On January 28, 1982, plaintiff commenced the instant underlying action against the INS alleging employment discrimination in violation of Title VII of the Act. In his complaint, he alleged that he had filed some sixteen racial discrimination charges with the EEOC since April, 1981. As stated earlier, the Government contends that there are only ten active complaints pending investigation. These complaints have been consolidated for expeditious processing in accordance with 29 C.F.R. 1613. 251(b) (Russel Aff., attached as Exh. B to Aff. of Michael D. Patrick). In any event, even assuming that not all of plaintiff's claims are ripe for adjudication, the court will examine the question of plaintiff's re-assignment against the backdrop of a series of allegedly discriminatory actions taken by the INS in retaliation for plaintiff's having engaged in protected EEO activities. Viewed in this light, the court concludes that plaintiff is entitled to preliminarily enjoin the re-assignment pending a final determination of this case.

*Conclusions of Law*

The court has jurisdiction of this action pursuant to § 717(c) of the Civil Rights Act of 1964, as amended (the Act), 42 U.S.C. § 2000e–16(c).

Section 706(g) of the Act, 42 U.S.C. § 2000e–5(g) provides in relevant part:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate....

While there was initially some dispute between the parties as to whether this section requires a showing of irreparable injury before a preliminary injunction can issue, both plaintiff and defendants now seem to agree that such a showing is required. Thus, in order to be entitled to a preliminary injunction under § 706(g) of the Act, plaintiff must meet the traditional standards for the granting of preliminary relief. As is the rule in this Circuit, he must make a clear showing of:

a) irreparable harm and b) either (1) likelihood of success on the merits; or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam); *Jack Kahn Music Co. v. Baldwin Piano and Organ Co.*, 604 F.2d 755, 758 (2d Cir. 1979). This court, after having carefully reviewed the record, concludes that plaintiff has met both prongs of the test and is therefore entitled to preliminary injunctive relief.

*1. Irreparable Harm*

Generally, if an injury complained of may be compensated by an award of monetary damages, an adequate remedy at law exists and no irreparable injury may be found as a matter of law. *Jackson Dairy Inc. v. H. P. Hood & Sons, Inc., supra*, 596 F.2d at 72. The Second Circuit has recognized, however, that even in situations where damages are available, irreparable harm may be found if damages are "clearly difficult to assess and measure." *Danielson v. Local 275, Laborers International Union of North America*, 479 F.2d 1033, 1037 (2d Cir. 1973). *See also Niagara Mohawk Power Corp. v. Graver Tank & Manufacturing*

*Co.*, 470 F.Supp. 1308, 1327–28 (N.D.N.Y. 1979); *Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.*, 452 F.Supp. 429, 438 (W.D.N.Y.1978). Based on the evidence presented to date, the court is convinced that this case presents a situation where the damages plaintiff will suffer would not be capable of reliable monetary calculation.

■ In essence, plaintiff seeks to recover damages for the violation of his Title VII rights, the stigma resulting from that violation, and the humiliation he and his family will suffer from the allegedly discriminatory transfer. The court is of the opinion that given the unique nature of Title VII rights, the precise amount of these damages would be impossible to ascertain should plaintiff ultimately prevail on his claim. Accordingly, the court agrees with plaintiff's contention that where the statutory civil rights of employees are found to have been violated, irreparable injury may be presumed from the loss of human dignity which such violations engender. *See Manhart v. City of Los Angeles Department of Water and Power*, 387 F.Supp. 980 (D.C.Cal. 1975), *aff'd in rel. part*, 577 F.2d 98 (9th Cir. 1978). *See also United States v. Central Carolina Bank and Trust Co.*, 431 F.2d 972, 975 (4th Cir. 1970); *United States v. Virginia Electric and Power Co.*, 327 F.Supp. 1034 (E.D.Va.1971). This is because a future award of back pay will not adequately compensate a Title VII plaintiff for the violation of his statutory rights.

In reaching this conclusion, the court is mindful of the fact that the Fifth and Sixth Circuits have recently held to the contrary. *See Porter v. Adams*, 639 F.2d 273 (5th Cir. 1981); *EEOC et al. v. Anchor Hocking Corp.*, 666 F.2d 1037 (6th Cir. 1981). The Second Circuit has not, as of yet, answered this precise question, to wit, how great a showing of irreparable injury is required when a party asserts a violation of his rights under the Civil Rights Act. The court believes that the Fifth and Sixth Circuit opinions, applying the Supreme Court decision in *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), to a

Title VII case, are neither persuasive nor binding on this court.

In *Sampson*, the plaintiff, a probationary federal employee, was dismissed from her position without the full procedural right of review statutorily accorded to her. The plaintiff asserted that her temporary loss of income and the ensuing humiliation constituted sufficient irreparable harm to support the issuance of a preliminary injunction. The Supreme Court disagreed, stating:

> Respondent's claim here is not that she could not as a matter of statutory or administrative right be discharged, but only that she was entitled to additional procedural safeguards in effecting the discharge....

 \*     \*     \*     \*     \*     \*

> [W]e think the showing falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case.

415 U.S. at 91–92, 94 S.Ct. at 953–54. In a footnote to the same passage, however, the Court went on to state:

> We recognize that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury may be found.

*Id.* at 92, 94 S.Ct. at 954. This court concludes that the instant case, involving an asserted violation of Title VII rights supported by two previous findings of retaliatory harassment by administrative agencies, is the type of case that the Supreme Court envisioned in the foregoing passage.

Here, plaintiff asserts a substantive violation under Title VII of the Civil Rights Act. His apparently continuing harassment by INS officials and final dismissal from his current position results in stigmatization and humiliation quite distinct from that occasioned by the plaintiff in *Sampson*. Further, to hold otherwise would be to strip the Civil Rights Act of its remedial effect and to contravene the policy of the federal courts to give the national policy against racial discrimination the "highest priority."

*Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 277 (2d Cir. 1977) (Feinberg, J. dissenting), *quoting Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). If the valid allegation of a statutory violation is insufficient to satisfy the irreparable injury requirement for injunctive relief, conceivably no discriminatory dismissal or transfer of a federal employee would satisfy the requirement. The statutory remedy in such an instance would become empty rhetoric. This court cannot imagine that the Supreme Court intended *Sampson* to have such an effect.

■ This court is mindful of defendants' argument that the showing of irreparable injury must be even more stringent when affirmative preliminary relief is sought by an employee who seeks to compel or enjoin a personnel action by the federal government. *Sampson, supra*, 415 U.S. at 83–84, 94 S.Ct. at 949–50. It is for this reason that in this Circuit, a district court must find irreparable injury sufficient in kind and degree to override the rule that the government, as a matter of policy, should be given the widest latitude in the dispatch of its own internal affairs. *Fuentes v. Roher*, 519 F.2d 379 (2d Cir. 1975). This court finds, however, that plaintiff's claims, supported by two agency decisions of retaliatory action by the INS, are presumptively of such kind and degree. Further, the right of federal governmental agencies to be free from the overriding supervisory control of the federal courts is not a free license for those agencies to violate the statutorily protected civil rights of their employees with impunity, secure in the knowledge that those harmed will be able to obtain only inadequate and prospective relief.

### 2. *Likelihood of Success on the Merits*

■ In determining whether a plaintiff has shown a likelihood of success on the merits of his ultimate case, a court is not called upon finally to decide the merits of the controversy. It is necessary only that the court find that the plaintiff has presented a strong *prima facie* case to justify the discretionary issuance of preliminary relief. *SEC v. Broadwell Securities, Inc.*, 240 F.Supp. 962, 967 (S.D.N.Y.1965). This court concludes that plaintiff has succeeded in presenting such a case.

Plaintiff has presented strong evidence supporting his claim that his reassignment within the INS was in retaliation for his having filed complaints to the EEOC. The INS asserts three justifications for the reassignment: plaintiff's failure to pass the Spanish tests; plaintiff's inadequate working knowledge of immigration law, investigative procedure and technique; and plaintiff's inability to write acceptable investigative reports.[1] The first justification, plaintiff's failure of the Spanish test, is by itself an insufficient basis for reassignment of the plaintiff (Tr.55–56). Plaintiff has strongly called into question the remaining justifications for his reassignment.

Plaintiff has presented evaluations from his supervisors in the INS prior to Mr. Slattery, in order to rebut the allegations which the INS asserts justify his reassignment. The evaluation memorandum of Joseph J. Walla, a Supervisory Criminal Investigator in the INS, referred to plaintiff's production as "above satisfactory," and his written work as requiring corrections "but not above the ordinary" (Tr.82). The acting supervisor in Mr. Walla's absence, Charles M. Turso, testified that plaintiff performed his duties "in a satisfactory manner" and that his overall performances "was good" (Tr.86).

Defendant has argued that these evaluations are not reliable as to plaintiff's 1981 performance, since they evaluated performance ending December 1980, prior to the Spanish exam and the various poor performance evaluations which formed the jus-

---

1. The Woods Letter contains a fourth reason for plaintiff's re-assignment: the findings and recommendations of the Regional Probationary Evaluation Board which reviewed plaintiff's overall performance and concluded it was not acceptable. There is nothing in the record, however, which indicates that the Board's findings were any different from the first three reasons discussed in the text.

tification for the reassignment. Certainly this is not the end of this court's inquiry. Plaintiff's present poor evaluation is coincidental with 16 separate claims of Title VII violations brought by plaintiff before the EEOC against the INS. At this point, ten of these claims remain outstanding. During the same period, the EEOC, on April 1, 1981, filed an opinion in which it found that "an instance of impermissible governmental employment practice, e.g., retaliatory harassment, albeit subtle" had been committed against plaintiff on a previous occasion during his INS employment. In addition to these events, plaintiff alleges that he had never been warned of the alleged deficiencies in his performance during the period in question, other than upon the receipt of the final letter of action which reassigned him.

Based on these facts taken as a whole, the court concludes that plaintiff has made the required showing of likelihood of success on the merits.

3. *Fair Ground for Litigation and Balance of Hardships.*

In the alternative, plaintiff has also demonstrated that there exist here sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor.

Plaintiff has shown that he already has obtained one MSPB decision against the INS for retaliatory harassment and one decision from the EEOC to the same effect. Subsequent to the EEOC decision, plaintiff was reassigned to a lesser position within the INS. The reasons for the reassignment are in question in this case. Whether plaintiff's reassignment was yet another act of retaliation by the INS is clearly a serious question going to the merits of this case which will present fair grounds for litigation.

Furthermore, the balance of hardships in this case tips decidedly in plaintiff's favor. The government claims that if preliminary injunctive relief issues in this case, it will be forced to retain an allegedly unqualified employee. In other words, the government asserts that this court is impermissibly interfering with the internal decisions of the INS. The court finds that this curtailment of the INS's discretionary power, while not insubstantial, does not outweigh the very real hardships which plaintiff will suffer if preliminary injunctive relief is not granted. If this occurs, plaintiff will be subject not only to the possible loss of overtime pay, but more significantly to the stigma incurred by an allegedly discriminatory reassignment, the loss of reputation resulting from the poor evaluations serving as the basis of the discriminatory reassignment, and the chilling effect which such reassignment will create for any future EEO activities in which plaintiff may choose to engage.

The court adds to this balance the public interest factors which should be considered. Title VII of the Civil Rights Act is a clear mandate from Congress that no longer will the United States tolerate any form of racial discrimination, whether subtle or overt. It is therefore the duty of the federal courts to make sure that the Act works effectively and that the intent of Congress is not hampered by an overly strict construction of the statute. *See Culpepper v. Reynolds Metals Co.,* 421 F.2d 888 (5th Cir. 1970). Further, it is now well recognized that the hardships incurred by discriminatory practices run not only to the person discriminated against but also to the society which permits it.

*Conclusion*

One of the basic purposes of a preliminary injunction is to maintain the status quo pending the ultimate determination of a case on the merits. *Gulf & Western Corp. v. Craftique,* 523 F.Supp. 603 at 611 (S.D.N.Y.1981). Here, this purpose can only be met by allowing plaintiff to remain in the position of Criminal Investigator until there is an opportunity to decide the merits of his case. It may well be that the INS' articulated reasons for plaintiff's transfer are not pretext but rather are valid and nondiscriminatory. The court cannot conclude at this stage, based on the showing that plaintiff has made, that such is the case. Ac-

cordingly, because plaintiff has satisfied the traditional requirements for preliminary injunctive relief, his motion for a preliminary injunction is granted.