UBS SECURITIES LLC, Plaintiff,

v.

Fridolin VOEGELI, Marcel Gruben-mann, Hans–Felix Voegeli, Thomas Bachmann, Felix Scherrer, Primus Fellmann, Marco Gemma, and Ernes-to Surbeck, Defendants.

No. 09 Civ. 8872 (DLC).

United States District Court,
S.D. New York.

Jan. 26, 2010.

Robert J. Giuffra, Jr., Brent J. McIntosh, Sullivan & Cromwell LLP, New York, NY, for Plaintiff.

Simon S. Kogan, Staten Island, NY, for Defendants.

## OPINION & ORDER

DENISE COTE, District Judge:

Plaintiff UBS Securities LLC ("UBS Securities") brings this action for declaratory and injunctive relief to enjoin defendants from pursuing claims against UBS Securities in a Financial Industry Regulatory Authority ("FINRA") arbitration proceeding. For the following reasons, UBS Securities is granted a declaratory judgment and permanent injunction restraining defendants from prosecuting their claims against UBS Securities in the FINRA arbitration proceeding.

## BACKGROUND

Defendants are Swiss citizens who were seed investors in a company called HealtheTech, Inc. ("HealtheTech"). UBS Securities—in whom UBS AG, a Swiss corporation, holds a minority membership interest—served as a financial advisor and underwriter to HealtheTech in connection with its initial public offering ("IPO") in 2002.[1] At some point during the process leading up to the IPO, Heal-

theTech's chairman provided defendant Fridolin Voegeli a copy of a January 2002 presentation that UBS Securities had given to HealtheTech's Board of Directors.[2] The January 2002 presentation included estimates of the projected value of HealtheTech's common stock after the completion of the IPO. Defendant Voegeli shared the presentation with the other defendants. As a condition of serving as underwriters for the IPO, the underwriters, including UBS Securities, required all insiders, including defendants, to execute "lockup" agreements promising that they would not sell any securities that they held in HealtheTech for 180 days following the IPO. All of the defendants signed such lockup agreements with UBS Securities. HealtheTech's IPO was completed on July 8, 2002. Defendants allege that HealtheTech's common stock did not perform as well as the projections indicated in the January 2002 presentation. Defendants do not allege that they purchased any shares in HealtheTech from or through UBS Securities at any time.

Almost seven years later, on February 28, 2009, defendants filed a Statement of Claim to commence a FINRA arbitration proceeding against UBS Securities, titled *Voegeli et al. v. UBS Warburg, L.L.C.*, FINRA No. 09–01501.[3] In the Statement of Claim, defendants allege that UBS Securities is liable for, *inter alia*, breach of fiduciary duty, fraudulent inducement, negligent misrepresentation, and purported violations of § 10b of the Securities Exchange Act of 1934 and Rule 10b–5

1. At the time of HealtheTech's IPO in 2002, UBS Securities was known as UBS Warburg LLC. UBS Securities is the successor entity to UBS Warburg LLC.

2. None of the defendants were members of HealtheTech's board of directors and thus did not receive a copy of the January 2002 presentation directly from UBS Securities.

3. FINRA is the primary regulator of broker dealers in the United States. UBS Securities is a FINRA member and as such, it has agreed to arbitrate disputes with its customers.

promulgated thereunder in connection with its role in HealtheTech's IPO in 2002. The Statement of Claim seeks approximately $13 million in compensatory damages and more than $27 million in punitive damages. Defendants allege that their claims are subject to FINRA arbitration because defendants were purportedly customers of UBS Securities.

On June 25, 2009, UBS Securities filed a response to the Statement of Claim in which it refused to submit to arbitration and denied the arbitrability of defendants' claims. UBS Securities contends that the defendants have never been customers of UBS Securities and, in fact, have no other direct relationship with UBS Securities whatsoever. During the parties' first conference with the FINRA arbitral panel on September 14, UBS Securities requested that the arbitration be halted unless defendants could demonstrate that they were customers of UBS Securities. The arbitral panel declined UBS Securities' request and issued scheduling order setting January 15, 2010 as the date by which UBS Securities had to file any dispositive motion in the arbitration.

On October 20, 2009, UBS Securities filed a complaint seeking a preliminary and permanent injunction restraining defendants from prosecuting their claims in arbitration.[4] On October 21, UBS Securities filed a motion for a preliminary injunction pursuant to Rule 65(a), Fed.R.Civ.P. At a pretrial conference held on November 5, the parties agreed to jointly seek a stay of all proceedings in the underlying FINRA arbitration pending the outcome of the instant litigation, including any appeal. The motion for a preliminary injunction became fully submitted on December 14. Following a conference on January 11, 2010, both parties consented to the consolidation of the preliminary injunction hearing with a trial on the merits pursuant to Rule 65(a)(2), Fed.R.Civ.P. The parties further agreed that the merits of this dispute present only legal questions that may be resolved on the basis of the papers submitted in connection with UBS Securities' motion for a preliminary injunction.

## DISCUSSION

### 1. Subject Matter Jurisdiction

Although defendants do not dispute the existence of subject matter jurisdiction over this action, a federal court has an independent obligation to determine whether subject matter jurisdiction exists. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Given that UBS Securities and the defendants are all citizens of Switzerland, complete diversity is lacking.[5] In *Vaden v. Discover Bank*, — U.S. —, 129 S.Ct. 1262, 1273, 173 L.Ed.2d 206 (2009), the Supreme Court recently held that under § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, federal courts have jurisdiction to hear a petition to compel arbitration so long as the underlying dispute between the parties "arises under" federal law.[6] *See Vaden*, 129 S.Ct. at 1273. In so holding, the Court noted that the

4. An amended complaint was filed on November 9, 2009, which added a claim pursuant to 28 U.S.C. § 2201 for a declaratory judgment that defendants cannot compel UBS Securities to arbitrate defendants' claims in the FINRA arbitration.

5. UBS Securities is a limited liability company and therefore possesses the citizenship of each of its members. *See Carden v. Arkoma Assoc.*, 494 U.S. 185, 195–96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); *Handelsman v. Bedford Village Assocs. Ltd.*, 213 F.3d 48, 51–52 (2d Cir.2000). Since one of UBS Securities' members is a citizen of Switzerland, UBS Securities has Swiss citizenship, like all of the defendants.

6. Section 4 of the FAA provides, in pertinent part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement,

FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Id.* at 1271 (citation omitted). Accordingly, in cases where the parties are not diverse, a federal court may "look through" a petition under § 4 of the FAA to determine whether it is predicated on an action that "arises under" federal law. *Id.* at 1273.

Although *Vaden* concerned a federal court's jurisdiction to *compel* arbitration pursuant to § 4 of the FAA, its reasoning applies to situations where, as here, a party seeks to *stay* or *enjoin* an arbitration. *See, e.g., Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir.2003) (diversity jurisdiction); *Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 132 (2d Cir. 2003) (per curiam) (diversity jurisdiction).

■ In this case, the underlying dispute between UBS Securities and the defendants include purported violations of § 10b of the Securities Exchange Act of 1934 and Rule 10b–5. Federal courts have jurisdiction over claims arising under the Securities Exchange Act. *See* 15 U.S.C. § 78aa; 28 U.S.C. § 1331. Because the substantive controversy between UBS Securities and the defendants "arises under" federal law, subject matter jurisdiction exists over UBS Securities' claims for declaratory and injunctive relief.

## 2. Claims for Declaratory and Injunctive Relief

■ "To obtain a permanent injunction, a plaintiff must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir.2006) (citation omitted). The existence of irreparable harm and the absence of an adequate remedy at law are addressed first.

■ It is beyond dispute that irreparable harm would result if UBS Securities were compelled to arbitrate defendants' claims without having agreed to arbitration. A party cannot be required to submit to arbitration any dispute which it has not agreed to so submit. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *Telenor Mobile Commc'ns AS v. Storm LLC,* 584 F.3d 396, 405–06 (2d Cir.2009). Accordingly, the Second Circuit has held that a party necessarily suffers irreparable harm if "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Merrill Lynch Inv. Managers,* 337 F.3d at 129 (citation omitted). Furthermore, it is not merely expense that underlies the prohibition against forcing a party to arbitrate a dispute that it did not agree to arbitrate. UBS Securities would also lose its right to have defendants' claims adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction it has not consented. As such, there would be no adequate remedy at law if UBS Securities is forced to arbitrate defendants' claim in the FINRA proceeding.

■ With respect to the merits of UBS Securities' application for declaratory and injunctive relief, it is necessary to determine the arbitrability of defendants' claims. "The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the *question of arbitrability,* is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam,* 537 U.S. at 83, 123 S.Ct. 588 (citing *AT & T Techs.,*

---

would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order direct-ing that such arbitration proceed in the manner provided for in such agreement. 9 U.S.C. § 4.

*Inc. v. Commc'ns Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); *accord Telenor Mobile Commc'ns,* 584 F.3d at 406. The parties do not dispute that the question of arbitrability in the instant action is subject to judicial determination.

Defendants do not allege that they have entered into a contract or other agreement with UBS Securities to arbitrate their claims. Instead, defendants contend that they were "customers" of UBS Securities and therefore their claims are subject to mandatory arbitration pursuant to FINRA Rule 12200. Under FINRA Rule 12200, in order for a claim against a FINRA member, such as UBS Securities, to be subject to mandatory arbitration, the dispute must: (1) be "between a *customer* and a member or associated person of a member"; and (2) arise "in connection with the business activities of the member." FINRA R. 12200 (emphasis added). The Second Circuit has held that "interpretation of the [FINRA] arbitration provision is a matter of contract interpretation, that New York law applies, and that the provision should thus be interpreted to give effect to the parties' intent as expressed by the plain language of the provision." *Bensadoun,* 316 F.3d at 176 (citation omitted).[7] The FINRA rules define "customer" broadly, excluding only "a broker or dealer." FINRA R. 12100(i); *Bensadoun,* 316 F.3d at 176. The Second Circuit has observed that the term "customer" as used in FINRA Rule 12200 refers to "one involved in a business relationship with an [FINRA] member that is related directly to investment or brokerage services." *Bensadoun,* 316 F.3d at 177 (quoting *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.,* 264 F.3d 770, 772 (8th Cir.2001)).

Defendants advance two theories for why they can compel UBS Securities to arbitrate their claims pursuant to FINRA Rule 12220. First, defendants claim that they were induced to sign lockup agreements with the four underwriters of HealtheTech's IPO, including UBS Securities, after receiving copies of the January 2002 presentation prepared by UBS Securities for HealtheTech's board. Defendants maintain that the lockup agreements provide a sufficient contractual relationship with UBS Securities to permit them to compel UBS Securities to arbitrate defendants' claims under the FINRA rules. Second, defendants argue that because they are not "brokers" or "dealers," they are customers of UBS Securities according to the definition of "customer" in FINRA Rule 12100. Both theories are unavailing.[8]

With respect to the first theory, defendants do not explain how the lockup agreements they signed entitle them to compel UBS Securities to arbitrate their claims pursuant to FINRA Rule 12200. Defendants do not allege that the lockup agreements themselves include an arbitration provision. Moreover, defendants do

---

7.  *Bensadoun* concerned interpretation of Rule 10301(a) of the National Association of Securities Dealers ("NASD") Code. The NASD is the predecessor organization to FINRA. Like FINRA Rule 12200, NASD Rule 10301(a) required arbitration of "any dispute, claim, or controversy ... between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons ... upon the demand of the customer." *See* 316 F.3d at 175–76. The Second Circuit's rulings concerning interpretation of NASD Rule 10301(a) have equal force with respect to FINRA Rule 12200.

8.  Some of the defendants also suggest in their declarations submitted in support of their opposition to the motion that they or companies with which they are associated had accounts with "UBS," apparently referring to the Swiss Bank, UBS AG. Defendants do not argue in their opposition brief, however, that these purported accounts with "UBS" make them customers of UBS Securities or an associated person of UBS Securities.

not allege, nor could they, that signing the lockup agreements rendered them "customers" of UBS Securities. By signing the lockup agreements, defendants merely promised not to sell any HealtheTech securities that they held until 180 days after the IPO. The lockup agreements did not create a "business relationship" between defendants and UBS Securities that is in any way "related directly" to UBS Securities providing "investment or brokerage services" to the defendants. *Bensadoun*, 316 F.3d at 177. As such, defendants' claim that the lockup agreements allow them to compel UBS Securities to arbitrate their claims is without merit.

Defendants' second theory for why they qualify as customers of UBS Securities is based on an untenable interpretation of the definition of "customer" in the FINRA rules. Defendants argue that because FINRA Rule 12100 defines "customer" to exclude only "brokers" and "dealers," and since they are neither brokers nor dealers, they must therefore be customers of UBS Securities. Defendants' interpretation of the definition of "customer" would imply that a party seeking to compel arbitration pursuant to the FINRA rules need not have an actual customer relationship with *any* FINRA member; rather, the party need only not be a broker or dealer. Such an interpretation of FINRA Rule 12100 would be absurd. Furthermore, defendants cite no legal authority to support their novel interpretation of the meaning of "customer" in the FINRA rules.

▮ Moreover, the only legal authority provided by defendants in support of their

argument is inapposite. Defendants cite *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 (2d Cir.2001), and *Vestax Securities Corp. v. McWood*, 280 F.3d 1078 (6th Cir.2002), for the proposition that in some cases, a party may compel arbitration despite not having been a customer of the FINRA member in question. In both of these cases, however, the party seeking to compel arbitration was a customer of a FINRA member's *associated person. See John Hancock*, 254 F.3d at 51 (sales representative of NASD member); *Vestax Securities*, 280 F.3d at 1080 (registered agent of NASD member); *see also Bensadoun*, 316 F.3d at 176 (noting that there was "no question" in *John Hancock* that the aggrieved investors were customers of an "associated person" of a FINRA member). By contrast, in the instant action, defendants do not allege that they were customers of an "associated person" of UBS Securities such that they may compel arbitration pursuant to FINRA Rule 12200. Rather, defendants became shareholders of a company that UBS Securities was advising in connection with an IPO. This is insufficient to establish a customer relationship with UBS Securities. Defendants have not shown that they had any other relationship, direct or indirect, with UBS Securities or with an associated person of UBS Securities. As such, defendants have failed to demonstrate that they were "customers" of UBS Securities for purposes of FINRA Rule 12200.

In sum, UBS Securities has shown that defendants' claims are not arbitrable in the FINRA forum or otherwise.[9] UBS Secu-

---

9. UBS Securities also argues that defendants' claims are time-barred under FINRA's Code of Arbitration Procedure. FINRA Rule 12206(a) provides: "No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim." FINRA R. 12206(a). Because all of the alleged wrongful conduct of UBS Securities occurred

in 2002, and defendants did not file their Statement of Claim until February 2009, UBS Securities contends that defendants' claims are untimely. Since defendants were not "customers" of UBS Securities under FINRA Rule 12200, and there is no arbitration agreement between defendants UBS Securities, it is unnecessary to resolve whether this Court

rities has also shown that it will suffer irreparable harm if defendants are not enjoined from proceeding in the FINRA arbitration for which there would be no adequate remedy at law. Accordingly, UBS Securities is entitled to the declaratory judgment and the permanent injunction it seeks.

### CONCLUSION

The Clerk of Court shall enter a declaratory judgment that defendants cannot compel UBS Securities to arbitrate defendants' claims against UBS Securities in the FINRA arbitration proceeding, and shall enter a judgment permanently restraining defendants from prosecuting their claims against UBS Securities in the FINRA arbitration. The Clerk of Court shall close the case.

SO ORDERED:

may reach UBS Securities' statute of limitations argument.