UBS FINANCIAL SERVICES, INC.
and UBS SECURITIES LLC,
Plaintiffs,

v.

WEST VIRGINIA UNIVERSITY HOSPITALS, INC., United Hospital Center, Inc., West Virginia University Hospitals–East, Inc., City Hospital Foundation, Inc., and West Virginia United Health System, Inc., Defendants.

No. 10 Civ. 4298 (VM).

United States District Court,
S.D. New York.

Jan. 4, 2011.

Jeremy Feigelson, Andrew J. Ceresney, Vanessa Stich De Simone, Debevoise & Plimpton, LLP, New York, NY, for Plaintiffs.

Athanasios Basdekis, Bailey & Glasser, LLP, Morgantown, WV, Michael L. Murphy, Bailey & Glasser, LLP, Charleston, WV, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

West Virginia University Hospitals, Inc., United Hospital Center, Inc., West Virginia University Hospitals–East, Inc., City Hospital Foundation, Inc., and West Virginia United Health System, Inc. (collectively, "Defendants") commenced, before the Financial Industry Regulatory Authority, Inc. ("FINRA"), an arbitration proceeding (the "FINRA Arbitration") against UBS Financial Services, Inc. and UBS Securities, LLC. (together, "UBS") on February 12, 2010. UBS now moves to restrain the Defendants from proceeding with the FINRA Arbitration or any form of action against UBS outside of New York County

(the "Motion"). The Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332.

For the reasons discussed below, the Court DENIES the Motion.

## I. *BACKGROUND*

In 2003, 2005, and 2006, UBS advised Defendants to issue, through UBS, municipal bonds structured as auction rate securities [1] ("ARS") worth approximately $329 million. The structure proposed by UBS, which combined ARS with interest rate swaps, was expected to provide Defendants with a low interest rate of approximately four percent on the ARS. On February 12, 2010, Defendants commenced an arbitration proceeding against UBS under Rule 12200 of the FINRA Code of Arbitration Procedure for Customer Disputes ("FINRA Code"). FINRA has indicated that the anticipated location for the arbitration is Charleston, West Virginia.

In the FINRA Arbitration, Defendants contend that UBS failed to disclose, among other things, that the fixed interest rates that UBS promised Defendants were entirely dependent on UBS's continued willingness to dominate and manipulate the market by placing support bids at low interest rates to effectively cap the ARS interest rate at a level desirable to Defendants.[2] UBS disputes the allegations made by Defendants, but it has not participated in the FINRA Arbitration in any way.

On October 27, 2010, UBS moved the Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for a preliminary injunction to prevent Defendants from proceeding with either (i) the FINRA Arbitration or (ii) any form of action or proceeding against UBS outside of New York County.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

 The district court has wide discretion in determining whether to grant a preliminary injunction. *See J.P. Morgan Secs. Inc. v. La. Citizens Prop. Ins. Corp.*, 712 F.Supp.2d 70, 75 (S.D.N.Y.2010) (*quoting Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir.2007) (internal quotation marks omitted)). However, a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (emphasis in original).

 A court may issue a preliminary injunction to restrain an arbitration only where the moving party demonstrates "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merit to make them a fair ground for litigation and balance of hardships tipping decidedly

---

**1.** ARS are variable-rate bonds whose interest rates are determined through periodic "Dutch" auctions (where an auctioneer commences the auction with a high asking price that is gradually lowered until a participant accepts the price). In the present context, investors specify the number of shares of the bond they wish to purchase and the lowest bond interest rate they are willing to accept. The bond's interest rate (the "Clearing Rate") will be the lowest rate at which there are sufficient purchasers to purchase all the secu-

rities for sale at auction. (*See* Mem. Supp. Pl.'s Mot. Prelim. Inj. ("Pl.'s Mem.") (Docket No. 11) at 3–4.)

**2.** An ARS auction fails when the number of securities offered for sale exceeds the number of bids for purchase. When this occurs, the interest rate until the next auction is set pursuant to a predetermined maximum rate as determined in the bonds' offering documents. (*See* Pl.'s Mem. at 4.)

toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir.2010). To fulfill the "irreparable harm requirement, [a plaintiff] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer,* 408 F.3d 112, 114 (2d Cir.2005) (internal quotation marks omitted).

■■■ Further, in determining whether a plaintiff has demonstrated a likelihood of success on the merits of the ultimate case, a court is "not called upon finally to decide the merits of the controversy. It is necessary only that the court find that the plaintiff has presented a strong prima facie case to justify the discretionary issuance of preliminary relief." *Gibson v. U.S. Immigration & Naturalization Serv.,* 541 F.Supp. 131, 137 (S.D.N.Y.1982) (internal citation omitted). In the alternative, the "serious questions" standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs of not granting the injunction outweigh the benefits. *See Citigroup Global Mkts.,* 598 F.3d at 35.

## B. APPLICATION

### 1. Preliminary Injunction Restraining FINRA Arbitration

#### a. Irreparable Harm

■■ UBS argues that, as a matter of law, it will suffer irreparable harm if it is required to participate in an arbitration against its will. The Second Circuit has held that it would be irreparable harm to be "forced to expend time and resources arbitrating an issue that is not arbitrable." *UBS Securities LLC v. Voegeli,* 684 F.Supp.2d 351, 355 (S.D.N.Y.2010) (*quoting Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 129 (2d Cir.2003)).

Defendants do not dispute UBS's position on irreparable harm, and the Court finds that UBS has satisfied its burden for showing "irreparable harm." *See Voegeli,* 684 F.Supp.2d at 357 (holding that plaintiff would suffer irreparable harm if compelled to participate in FINRA arbitration with non-"customers").

#### b. Likelihood of Success

■■ The question of arbitrability is resolved by courts rather than arbitrators, unless the parties have explicitly agreed otherwise. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The parties have not done so in this case.

■■ Pursuant to the FINRA Code, a FINRA member must arbitrate a dispute if (a) arbitration is required by a written agreement or requested by the customer, (b) the dispute is between a FINRA member or associated person of a FINRA member and its "customer," and (c) the dispute arises in connection with the business activities of the member. *See* FINRA Code, Rule 12200. Of the three elements listed above, two are not in dispute here. First, while no written or oral arbitration agreement exists in this case, Defendants requested arbitration under the FINRA Code, which creates a compulsory arbitration agreement of which customers are intended third party beneficiaries. *See Oppenheimer & Co., Inc. v. Neidhardt,* No. 93 Civ. 3854, 1994 WL 176976, at *1 (S.D.N.Y. May 5, 1994), *aff'd,* 56 F.3d 352 (2d Cir.1995). Second, UBS does not contest that the FINRA Arbitration dispute relates to its business activities. Thus, the only remaining question is whether Defen-

dants qualify as "customers" of UBS under the FINRA Code.

The FINRA Code does not define the term "customer." Rather, it simply states that "[a] customer shall not include a broker or dealer." FINRA Code, Rule 12100(i). This "sole exclusion suggests that FINRA intended to require its members to arbitrate disputes with the full array of parties with whom they have business dealings, without limiting the scope of the rule to parties who reasonably relied on the FINRA member for impartial advice." *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, No. 08 Civ. 5655, 2010 WL 1222026, at *3 (S.D.N.Y. Mar. 29, 2010). Since "ambiguity in the language [of Rule 12100(i) ] must be construed in favor of arbitration," courts have interpreted the term "customer" broadly. *John Hancock Life Ins. v. Wilson*, 254 F.3d 48, 58 (2d Cir.2001). UBS argues that applying the FINRA definition of "customer" to mean anyone who is not a broker or dealer would lead to an over-inclusive and absurd result. While the Court agrees with this argument as a general proposition, *see Voegeli*, 684 F.Supp.2d at 356 (finding "absurd" defendants' position that "since they [were] neither brokers nor dealers, they must therefore be customers of UBS Securities"), it is certainly not the end of the analysis. The case upon which UBS relies in making this argument found absurd an "interpretation of the definition of "customer" [which] would imply that a party seeking to compel arbitration pursuant to the FINRA rules need not have an actual customer relationship with any FINRA member; rather, the party need only not be a broker or dealer." *Id.* at 356.

In an early decision interpreting the National Association of Securities Dealers' ("NASD") Code of Arbitration Procedure (the "NASD Code"),[3] the Third Circuit, relying on an interpretive statement issued by NASD's National Arbitration Committee, held that a securities issuer is a customer of a member firm where a dispute arises over a proposed underwriting. *See Patten Secs. Corp., Inc. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 406 (3d Cir.1987).

A recent case from this District further bolsters Defendants' position that they are UBS's "customers" for FINRA purposes. *J.P. Morgan Securities Inc.* addressed an almost identical issue. *See* 712 F.Supp.2d at 73. In that case, J.P. Morgan had served as an underwriter and broker-dealer for Louisiana Citizen's issuance of ARS. Noting the Second Circuit instruction that "any ambiguity in the meaning of 'customer' . . . should be construed in favor of arbitration," the court determined that "an issuer is a customer of an underwriter." *Id.* at 78–79. UBS does not attempt to distinguish its situation from that it issue in *J.P. Morgan Securities Inc.*, but rather asks that the Court not be guided by that decision. However, the Court finds the reasoning in that case to be persuasive and agrees that FINRA intended for an issuer to be a customer of an underwriter.

 Finally, UBS argues that Defendants should not be entitled to demand arbitration because they could not have reasonably relied on UBS for impartial advice. However, "FINRA intended to require its members to arbitrate disputes with the full array of parties with whom

**3.** NASD was the predecessor to FINRA, and FINRA Rule 12200 is identical to Rule 12200 of the NASD Code, which is itself an amended version of former Rule 10301 of the NASD Code. The case law interpreting Rule 10301 applies with equal force to cases interpreting Rule 12200, as the amendment did not effect any substantive change to the rule. *See Herbert J. Sims & Co., Inc. v. Roven*, 548 F.Supp.2d 759, 763 n. 2 (N.D.Cal.2008).

they have business dealings, without limiting the scope of the rule to parties who reasonably relied on the FINRA member for impartial advice." *Wachovia Bank, N.A.,* 2010 WL 1222026, at \*3. Large financial institutions today offer a wide spectrum of investment, underwriting, and brokerage services. With the ever-increasing complexities of dealing in financial products and their derivatives, it is not uncommon for these institutions to play more than one role in a multi-faceted transaction. Here, for instance, UBS not only served as an underwriter for Defendants on the ARS issuance, proposing that Defendants combine ARS with interest rate swaps, it also participated on its own account in the subsequent ARS auctions. To find a relationship of "impartial advice" to be a prerequisite under these circumstances would defeat the purpose of Rule 12200. Therefore, while UBS's argument may be relevant to the merits of the issue to be arbitrated, it is inapposite to the question of Defendants' status as "customers." *See id.* at \*3.

At the preliminary injunction stage, the Court is not called upon to make an ultimate determination on the merits of the controversy. Nevertheless, UBS has failed to present a "strong prima facie case" evincing its likelihood of success on the question of whether Defendants qualify as "customers" of UBS under the FINRA Code. *Gibson,* 541 F.Supp. at 137.

Next, the Court considers whether UBS has raised sufficiently serious questions going to the merits of the dispute, and a balance of the equities tipping decidedly in its favor.

### c. *Sufficiently Serious Questions*

UBS maintains that this case raises complex issues of law and fact, and that the hardships it would face if compelled to arbitrate far outweigh the possible hardship to WVUH if a preliminary injunction

is granted. The burden on UBS here is no lighter than the one it bears under the "likelihood of success" standard, as it must not only show that there are "serious questions" going to the merits but also establish that "the balance of hardships hardships tip[s] decidedly" in its favor. *Citigroup Global Mkts.,* 598 F.3d at 35.

■ The Court is not persuaded that, even if there were sufficiently serious questions going to the merits of this case, the balance of hardships tips decidedly in UBS' favor. Rather the Court finds that further delay of these proceedings would frustrate Defendants' right to a speedy arbitration of their claims. This hardship is not outweighed by any potential hardship to UBS. Therefore, the Court holds that UBS has not satisfied its burden as to this prong. *See MyWebGrocer, LLC v. Hometown Info, Inc.,* 375 F.3d 190, 194 (2d Cir.2004) (affirming denial of injunction where balance of hardships was found to be "equal").

Consequently, UBS's motion for a preliminary injunction enjoining the FINRA Arbitration is denied.

### 2. *Preliminary Injunction Restraining Action Outside of New York County*

■ The FINRA Code requires that the FINRA Director select the hearing location in accordance with the FINRA Code and empowers him to change the hearing location upon motion of a party. *See* FINRA Code, Rule 12213(a)(1) & (3). When an arbitration involves a customer, FINRA usually "select[s] the hearing location closest to the customer's residence at the time of the events giving rise to the dispute." *See id.,* Rule 12213(a)(1). Instead of moving FINRA to challenge its decision to conduct the arbitration in Charleston, West Virginia, UBS argues

that the Court should enforce the venue selection clause in a Broker–Dealer Agreement signed by the parties, which, according to UBS, requires that Defendants bring their claims against UBS in New York County.

In a conflict between a forum selection clause contained in the parties' arbitration agreement—here, the FINRA Code—and a clause in the parties' Broker–Dealer Agreement where any reference to arbitration is "[c]onspicuously absent," the issue must be resolved in favor of the arbitration agreement. *Patten Securities Corp., Inc.*, 819 F.2d at 407 (refusing to enforce a forum selection clause designating New Jersey as forum for disputes to enjoin arbitration proceedings under the NASD Code in Colorado). *Cf. Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir.2005) ("[W]e cannot say that the Forum Selection Clause, which does not even mention arbitration, either specifically precludes arbitration or contains a positive assurance that this dispute is not governed by the Arbitration Agreement.").

In *J.P. Morgan Securities Inc.*, the court noted that FINRA's forum selection provision would control despite the existence of a separate provision between the parties and admitted "there is a strong likelihood that the arbitration will take place in [FINRA determined location]." 712 F.Supp.2d at 74–75. Although UBS certainly has the right to challenge the venue of the arbitration, "this challenge must be heard by the arbitrators." *Id.* at 74. Finally, it is worth noting that both the obligation to arbitrate under FINRA and the forum selection clause "can be given effect, for arbitration awards are not self-enforceable. . . . [E]ven if arbitration is completed, the forum selection clause would appear to dictate the location of any

action to enforce the award." *Patten Securities Corp.*, 819 F.2d at 407.

Because the FINRA Code constitutes the arbitration contract between UBS and Defendants, its provision on the hearing location is determinative. Therefore, UBS's motion for a preliminary injunction restraining any action against it outside of New York County is denied.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 10) of plaintiffs UBS Financial Services, Inc. and UBS Securities, LLC (together, "UBS") for a preliminary injunction restraining defendants herein from proceeding before the Financial Industry Regulatory Authority with its arbitration at issue in this action is DENIED; and it is further

**ORDERED** that UBS's motion for a preliminary injunction preventing defendants herein from proceeding with any form of action against UBS outside of New York County is DENIED; and it is further

**ORDERED** that UBS is directed to inform the Court by January 11, 2011 whether, in light of the instant ruling, it contemplates any further proceedings in this Court.

**SO ORDERED.**